**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph Charles BONANNO, Jr., Defendant–Appellant.**

**No. 86–1352.**

United States Court of Appeals, Ninth Circuit.

Argued April 12, 1988.

Submitted April 26, 1988.

Decided July 15, 1988.

As Amended Aug. 8, 1988.

---

**436**

Charles R. Garry and Peter A. Leeming, San Francisco, Cal., for defendant-appellant.

Nancy Simpson, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before FERGUSON and LEAVY, Circuit Judges, and REDDEN,* District Judge.

REDDEN, District Judge:

Joseph Charles Bonanno, Jr. appeals his conviction, following a jury trial, for mail

* The Honorable James A. Redden, United States District Judge for the District of Oregon, sitting by designation.

fraud, wire fraud and conspiracy. Bonanno urges five grounds for reversal: (1) outrageous governmental conduct; (2) entrapment; (3) the district court's failure to instruct the jury on the good faith defense; (4) the district court's abuse of its discretion in limiting cross-examination of a governmental witness; and (5) insufficient evidence to support the conviction. We affirm.

Joseph Charles Bonanno, Jr. was indicted with four codefendants: Salvatore ("Bill") Vincent Bonanno, Jerome Gatto, Virgil Redmond, and Lyle Green. The indictment alleged 47 counts including charges for violations of 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 371 (conspiracy). The indictment alleged that the defendants engaged in a scheme to defraud investors through the operation of their corporation, Sunburst Industries. The scheme involved devising fraudulent purchase orders for a "United States historical poster" to be produced and marketed by the defendants. Defendants sought to obtain funds on the strength of the fraudulent purchase orders.

Redmond died prior to trial and Green and Gatto entered guilty pleas. Salvatore Bonanno was found not guilty and all further references to Bonanno are to appellant Joseph Bonanno.

## FACTS

In 1981, Gatto and Redmond formed Sunburst Industries and purchased the copyright to the poster from Green. Green had already sold "well more than 100%" of his interest in the poster to other investors. During late 1981 and 1982, Sunburst obtained several purchase orders, none of which were sound. We summarize:

The Unicap order was solicited by Gatto and was sent by Peter Pravettoni, president of Unicap and friend of both Gatto and Bonanno. Pravettoni knew he could not afford the posters and cancelled the December 1981 order in February of 1982.

The Calco order was placed by Robert Price for his company, which was in chapter 11 bankruptcy. Calco could not afford its January 1982 order, and cancelled in February 1982. Price cancelled after Mike Hines, an investigator for the Utah Attorney General's office, advised Price that Sunburst was under investigation for its various poster transactions.

The Cal West purchase order was from a company owned by Joe Livingston, but managed by Gatto. It, too, was financially strapped and soon cancelled its order.

Asset Funding, a factoring company, loaned $200,000 to Sunburst based upon the Unicap and Cal West purchase orders. The repayment check was rejected for insufficient funds. Asset Funding then seized the inventory collateral.

The Federal Bureau of Investigation then recruited informant Lou Terra to pose as a potential investor in Sunburst. Terra himself faced criminal charges for his activities in real estate development and factoring money. Terra recorded a series of telephone conversations as well as face to face meetings with Bonanno, Gatto and the other defendants. These conversations involved the possibility of Terra factoring loans for posters.

On February 8, 1982, Gatto told Terra that Sunburst had a buyer for $350,000 worth of posters, requested $810,000 in funding from him, and sent Terra the Calco purchase order. Gatto then told Terra that Sunburst was shipping on the Unicap and Cal West purchase orders. Later, Gatto admitted that the Calco purchase order had been cancelled but said it was to be replaced. Several days later, Sunburst sent Terra information on another potential purchaser whom Bonanno identified as a "huge" marketer with connections to the Southland Corporation and its 7–11 store chain (the Bear Body/7–11 order). Bonanno told Terra that Sunburst would be selling posters in 7–11 stores nationwide. Gatto also told Terra that the posters were about to be shipped and asked for a loan. He offered to guarantee repayment by assignment of the poster copyright and inventory, and told Terra that Sunburst was not "strong" enough to provide a bank guarantee. Terra later learned that no Bear Body/7–11 purchase order existed. The Bowers order, another purchase order, was discussed by Terra, Gatto and Bonanno. During the course of the taped conversations regarding Bowers, Bonanno admitted that Bowers was "not in a position to buy the paperwork," but assured Terra that Bowers' authorized representative, Louis Ivie, would tell Terra's "investors" "whatever you [Terra] want him to say."

Bonanno was convicted on one count of mail fraud, seven counts of wire fraud and one count of conspiracy.

# I

## OUTRAGEOUS GOVERNMENTAL CONDUCT

▉ Bonanno challenges the trial court's denial of his several motions to dismiss based on outrageous governmental conduct. A motion to dismiss an indictment based on this ground is a question of law reviewed *de novo*, with factual findings reviewed under the clearly erroneous standard. *United States v. Bogart*, 783 F.2d 1428, 1434 (9th Cir.), *vacated on other grounds sub nom. United States v. Wingender*, 790 F.2d 802 (1986). This defense will not succeed unless the governmental conduct challenged is so grossly shocking as to violate the universal sense of justice. *United States v. Simpson*, 813 F.2d 1462, 1464 (9th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987).

Unacceptable governmental conduct occurs when the government agents act brutally by using physical or psychological coercion against the defendant, or the agents engineer and direct the criminal enterprise from start to finish. *Bogart*, 783 F.2d at 1435–36. The government's conduct is permissible when: (1) the defendant was already involved in a continuing series of similar crimes, or the charged criminal enterprise was already in progress at the time the government agent became involved; (2) the agent's participation was not necessary to enable the defendants to continue the criminal activity; (3) the agent

used artifice and stratagem to ferret out criminal activity; (4) the agent infiltrated a criminal organization; and (5) the agent approached persons already contemplating or engaged in criminal activity. *See Bogart,* 783 F.2d at 1437–38.

■ Bonanno points to three aspects of the government's conduct in its investigation of Sunburst as violative of his due process rights. First, Agent Hines of the Utah Attorney General's office stated to Robert Price of Calco that Sunburst was under investigation and had no right to sell the posters. Bonanno claims this discouraged Price from becoming a legitimate investor and created financial pressure on Sunburst. Second, Bonanno claims that Terra's activities forced Sunburst to rely on Terra as a source of funding. Finally, Bonanno claims that Terra intentionally delayed delivering money to Sunburst until the Bear Body/7–11 order was no longer available, thereby "driving the participants to desperation and guaranteeing the failure of the company."

None of these alleged governmental actions constituted outrageous governmental conduct. Agent Hines' statements were accurate. He testified that he contacted Price to determine whether the order was bona fide after being assured by Redmond that it was. Hines told Price there was going to be an investigation and that there had been numerous complaints about Green. There is no evidence that Terra's conduct forced Bonanno to rely on him as a funding source. Terra neither provided money nor prevented Sunburst from pursuing other funding sources. Bonanno's claim that Terra intentionally delayed payment until the Bear Body/7–11 order was unavailable is not supported by the evidence. There was no evidence of such an order or evidence that Gatto took steps to act upon it.

There is no evidence that the government "engineer[ed] and direct[ed] the criminal enterprise from start to finish," as required to establish this defense. *See Bogart,* 783 F.2d at 1436. Terra did not devise the plan for factoring fraudulent purchase orders. *See United States v. Williams,* 791 F.2d

1383, 1386 (9th Cir.), *cert. denied,* 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986); *see also United States v. Citro,* 842 F.2d 1149, 1153 (9th Cir.1988). The defendants here were already involved in the purchase order scheme when Terra approached them. *See Bogart,* 783 F.2d at 1438.

## II

### ENTRAPMENT

Bonanno also argues that the evidence was insufficient to support his conviction because the defense of entrapment was demonstrated. When the sufficiency of the evidence is challenged, this court must view the evidence in the light most favorable to the government, and decide if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Stewart,* 770 F.2d 825, 831 (9th Cir.1985), *cert. denied,* 474 U.S. 1103, 106 S.Ct. 888, 88 L.Ed.2d 922 (1986).

■ This defense focuses upon the defendant's predisposition to commit the crime, rather than on the actions of government agents. *United States v. So,* 755 F.2d 1350, 1353 (9th Cir.1985); *United States v. Diggs,* 649 F.2d 731, 738 (9th Cir.), *cert. denied,* 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981). This court has developed five factors to consider when determining whether a defendant was entrapped: (1) the defendant's character or reputation; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement. *So,* 755 F.2d at 1354. The most important factor is whether the defendant showed any reluctance to commit the criminal act which was overcome by repeated government inducement. *See Citro,* 842 F.2d at 1151–52; *see also United States v. Reynoso–Ulloa,* 548 F.2d 1329, 1341 (9th Cir.1977), *cert. denied,* 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978).

Bonanno argues that Terra repeatedly suggested that he and Gatto engage in criminal activity, that the defendants did not realize a profit, and that Gatto demonstrated reluctance to engage in criminal activity. The evidence shows, however, that the defendants and not Terra suggested the criminal activity. The defendants engaged in the activity for profit and there is no evidence of any reluctance by Bonanno to engage in the criminal activity. Bonanno is not entitled to any benefit from Terra's alleged inducement of Gatto. This circuit does not recognize the theory of derivative entrapment. *Stewart*, 770 F.2d at 831. Viewed in the light most favorable to the government, the evidence was sufficient to support the jury's conclusion that Bonanno was not entrapped.

## III

### RESTRICTION OF CROSS–EXAMINATION

Bonanno next contends that the district court abused its discretion in limiting the cross-examination of government witness Lou Terra. We find no such abuse of discretion. The matters on which Bonanno sought to cross-examine Terra were cumulative of other evidence elicited upon lengthy cross-examination, and were irrelevant to the issues at trial.

▮ The trial court's decision to limit the scope of cross-examination is reviewed for abuse of discretion. *United States v. Feldman*, 788 F.2d 544, 554 (9th Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). A defendant's constitutional right to confront witnesses through cross-examination is limited to issues relevant to the trial. *Id.* Generally, once cross-examination reveals sufficient information with which to appraise a witness's possible bias and motives, confrontation demands are satisfied. *United States v. DeLuca*, 692 F.2d 1277, 1282 (9th Cir. 1982).

Here, the district court prevented Bonanno's counsel from cross-examining Terra regarding civil cases pending against or concluded against Terra. When this attempt to cross-examine began, Bonanno's counsel had already cross-examined Terra for eight consecutive trial days. Terra was repeatedly questioned about his bias, his motives for testifying, and his cooperation as an FBI informant. The questions had revealed Terra's prior criminal conviction for filing a false financial statement, a pending criminal charge against him, his prior arrests, his prior business experiences, and his participation in the investigation. This thorough cross-examination satisfied constitutional requirements. *See United States v. Sterling*, 742 F.2d 521, 527 (9th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985).

Bonanno argues that evidence of the civil lawsuits would have shown Terra had engaged in a pattern of fraudulent conduct, highly probative of Terra's credibility. Bonanno's counsel was not able to show Terra was held liable for fraud in any of these cases. In any event, such evidence would have been cumulative of that already elicited about his criminal convictions for fraudulent conduct. *See United States v. Weiner*, 578 F.2d 757, 766 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978).

▮ Bonanno also claims the evidence of the civil lawsuits would have been relevant to establish the defenses of outrageous governmental conduct and entrapment. Governmental use of informants who previously engaged in wrongful or illegal activity does not constitute outrageous governmental conduct. *See Simpson*, 813 F.2d at 1464–70. Further, evidence regarding Terra's character or behavior would not be relevant to the defense of entrapment, which focuses upon the predisposition of the defendant, not the conduct of the governmental agents. *See So*, 755 F.2d at 1353. The trial court did not abuse its discretion in restricting the cross-examination. *See Weiner*, 578 F.2d at 766.

## IV

### GOOD FAITH DEFENSE

Bonanno next claims error because the trial court failed to instruct on the good faith defense, an instruction not requested by him. He claims this error was not cured by the court's instruction on specific intent. There was no error. The instruc-

tion on specific intent precluded the need for an instruction on good faith.

 A defendant is not entitled to a separate good faith instruction when the court adequately instructs on specific intent. *United States v. Green,* 745 F.2d 1205, 1209 (9th Cir.1984), *cert. denied,* 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985); *see also United States v. Cusino,* 694 F.2d 185, 188 (9th Cir.1982), *cert. denied,* 461 U.S. 932, 103 S.Ct. 2096, 77 L.Ed. 2d 305 (1983).

 The court's failure to give an instruction not requested is reviewed for plain error. *United States v. McCollum,* 802 F.2d 344, 346 (9th Cir.1986). Plain error is a highly prejudicial error affecting substantial rights. *United States v. Krasn,* 614 F.2d 1229, 1235–36 (9th Cir. 1980). This court will reverse for plain error only in exceptional circumstances. *Id.* at 1235–36. There are none in the instant case. *See United States v. Vincent,* 758 F.2d 379, 383 (9th Cir.), *cert. denied,* 474 U.S. 838, 106 S.Ct. 116, 88 L.Ed.2d 95 (1985).

V

SUFFICIENCY OF THE EVIDENCE

Finally, Bonanno contends that the evidence was insufficient to support the convictions. We conclude, however, that viewing the evidence in the light most favorable to the government, a rational jury could have reached a guilty verdict. This being so, we must affirm. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *United States v. Loya,* 807 F.2d 1483, 1486 (9th Cir.1987).

 To convict of mail or wire fraud, the prosecution must prove that the defendant (1) used or caused the use of the mail or telephone in interstate commerce; (2) in furtherance of a scheme to defraud; (3) with the intent to defraud. 18 U.S.C. §§ 1341, 1343; *McNally v. United States,* 483 U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987); *United States v. Bohonus,* 628 F.2d 1167, 1171 (9th Cir.), *cert. denied,* 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980); *Cusino,* 694 F.2d at 188. Conspiracy is established where there is: (1) an agreement to accomplish an illegal objective; (2) the commission of one or more overt acts in furtherance of the illegal purpose; and (3) the requisite intent by the defendant to commit the target offense. *United States v. Bailey,* 607 F.2d 237, 243 (9th Cir.1979), *cert. denied,* 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980).

 Here, the jury found Bonanno guilty of two wire fraud counts involving representations made by Bonanno and Gatto to Terra relating to the Bear Body/7–11 purchase order; six counts of wire fraud and mail fraud relating to the Bowers purchase order; and one count of conspiracy, with the mail and wire fraud charges as the overt acts.

The evidence demonstrated that Bonanno and the other defendants engaged in a single scheme to defraud investors which continued over several months, as the defendants used false or misleading purchase orders to obtain and attempt to obtain funds from investors. There was evidence that all of the purchase orders were nonexistent or worthless. Defendants persuaded or attempted to persuade potential investors to invest with Sunburst based on these orders. There was evidence that Bonanno dealt with Terra by participating in meetings with Gatto and Terra, by phoning Terra regarding the Bear Body/7–11 purchase order and by representations to Terra about the Bowers purchase order.

Bonanno argues that other conclusions could have been reached based upon the evidence, but this court must affirm if any rational trier of fact could have reached a guilty verdict. *See Loya,* 807 F.2d at 1486. When viewed in the light most favorable to the government, the evidence supports the jury's conviction even though there may have been some evidence suggesting support for Bonanno's version of the facts. *See Green,* 745 F.2d at 1208.

Bonanno extends his challenge by arguing that under the literal language of the indictment the government must be held to prove that the statements made by him and his conspirators must each be both false and fraudulent. Such is not the case. Assuming, arguendo, that a rational trier of fact could not have found each statement in each count resulting in conviction to be both false and fraudulent, that trier need

not have done so under this indictment. Where a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those acts conjunctively charged may establish guilt. *United States v. Clausen*, 792 F.2d 102, 104–05 (8th Cir.1986), *cert. denied*, 479 U.S. 858, 107 S.Ct. 202, 93 L.Ed.2d 133 (1986). This indictment alleges in the conjunctive as did the indictment in *Clausen. Id.* at 105. Further, this court recognizes that the allegations of a scheme to defraud and obtaining money by misrepresentations are independent and alternate charges. *United States v. Halbert*, 640 F.2d 1000, 1007 (9th Cir.1981).

Finally, Bonanno contends that the evidence was insufficient to support the element of specific intent or knowledge by him, but the record reflects otherwise. Bonanno's various statements to Terra, together with Terra's testimony of Bonanno's participation, could well have supplied those essential elements to the jury. *See United States v. Kaplan*, 554 F.2d 958, 964 (9th Cir.), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977).

AFFIRMED.