993 F.2d 884
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles W. ANSHEN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard CANDELARIA, Defendant-Appellant.
 Nos. 91-10440, 91-10441.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1992.
Decided May 17, 1993.
As Amended June 9, 1993.
 
 Before: GOODWIN, FARRIS, and PREGERSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendants-Appellants Charles W. Anshen[1] and Richard Candelaria (collectively "defendants") appeal their jury convictions for conspiring to impair and impede the Internal Revenue Service ("IRS") in the assessment and collection of income taxes in violation of 18 U.S.C. § 371, and aiding in the preparation of a false tax return in violation of 26 U.S.C. § 7206(2). Candelaria also appeals his conviction for filing false returns in violation of 26 U.S.C. § 7206(1). The defendants challenge (1) the sufficiency of the evidence on their conspiracy conviction, and (2) a number of alleged errors of the district court in the admission of evidence and the instruction of the jury. We reverse.
 
 FACTS
 
 3
 Defendant Candelaria is the former president of a company called International TelData Corp. ("TelData"). Defendant Anshen, an attorney, is a long-time friend of Candelaria, and former corporate counsel for TelData.
 
 
 4
 The rather convoluted facts underlying the defendants' convictions involve a series of transactions in the early 1980s. Through various means, Candelaria and Anshen acquired a significant amount of TelData stock. One of the ways defendants acquired stock was through settlement of a misappropriation lawsuit brought against a former secretary/treasurer of TelData. In 1981, Anshen met with a Bahamian investment banker named Graham Tyers who agreed to liquidate defendants' TelData stock in the market through his Bahamian brokerage company, Portfolio Management Services. Apparently, at Tyers' request, shares of TelData stock were then transferred into nominee accounts established for the defendants in the Bahamas. The government alleges that, to sell their TelData stock, the defendants used seventeen different nominee names, seven different stockbrokers, thirteen different banks, and two foreign accounts involving eighteen separate compound transactions. Defendants claimed that the reason they came to Tyers in the Bahamas to trade their stock was their concern that such large trades of stock would affect the stock's price if made domestically in America. Candelaria further claimed that all arrangements for the sale of stock were made by Anshen.
 
 
 5
 At trial, the government showed through a summary tax witness that from sales of TelData stock, Candelaria made $1,164,708.83 in 1982 and $1,749,758.50 in 1983 while only reporting income of $194,519.00 and $193,238.00 respectively in those years. Government witnesses testified that even allowing Candelaria every possible consideration as to capital gains treatment, the evidence still demonstrated unreported taxable income of $239,091.53 in 1982 and $196,243.40 in 1983. Candelaria claimed that some of the proceeds he received from Anshen from the sale of stock were in the form of a loan from Anshen, and that he did not report the remainder because he had been advised by Anshen, an attorney, that taxes had already been paid on those "joint proceeds." Candelaria additionally claimed that he was unaware of the Bahamian trades, and that Tyers, the agent in charge of those accounts and one of the prosecution's key witnesses, was a "crook"--mismanaging his accounts, engaging in unfair self-dealing, and paying himself excessive fees out of defendants' accounts.
 
 
 6
 The government further presented evidence that Anshen failed to report any of the Bahamian stock sales in 1982 and 1983, amounting to approximately $1,400,000, and over $970,000 in domestic stock sales in 1983 made through New York brokerage firm Jeffries and Co.
 
 
 7
 The government's case included evidence that, in 1983, the defendants used a man named Ralph Mosa--described as "a small time slot machine route owner in Las Vegas"--to front for them in order to obtain a Nevada gaming license so that defendants could operate a new Las Vegas casino called the "Silver Star." In order to establish Mosa's financial viability so that he could obtain the gaming license, defendants and Mosa entered into a "stock pooling arrangement" involving TelData stock. Mosa agreed to place proceeds from the sale of TelData stock into a savings account he had at Frontier Savings in Las Vegas, Nevada. Mosa testified that Candelaria advised him to report all sales from the pooled accounts to the IRS, and to pay all taxes that accrued out of the accounts. Mosa further testified that he believed he did properly pay all taxes owing, as directed by Candelaria. Still, the government argued that in 1983 and 1984, Mosa unlawfully filed tax returns prepared at the direction of the defendants wherein he falsely alleged as his own income that which belonged to Candelaria.
 
 
 8
 A Nevada jury convicted both defendants on three counts of the indictment: one count of conspiracy to defraud the United States, and two counts of willfully aiding and assisting in the preparation of a false return. Defendant Candelaria was additionally convicted on two counts of filing a false tax return.
 
 DISCUSSION
 
 9
 I. Sufficiency of the Evidence in Support of Defendants' Conviction for Conspiracy to Defraud the IRS
 
 
 10
 Defendants claim that there is insufficient evidence to support their convictions under 18 U.S.C. § 371 for conspiring to impair and impede the IRS. When the sufficiency of the evidence in support of a criminal conviction is challenged, we view the evidence in the light most favorable to the prosecution to determine if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). We hold that there was sufficient evidence to support the convictions.
 
 
 11
 The first count of defendants' grand jury indictment charged them with willfully conspiring "to defraud the United States of America by impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service ... in the ascertainment, computation, assessment and collection of ... income taxes." To establish a conspiracy to defraud the United States, the government must prove "the existence of an agreement to accomplish an illegal objective, an overt act in furtherance of the objectives of the conspiracy, and intent on [the] part of the conspirators to agree, as well as to defraud the United States." United States v. Crooks, 804 F.2d 1441, 1448 (9th Cir.1986). At trial, the government presented evidence showing that Anshen established accounts for himself and Candelaria in the Bahamas and the Isle of Man, two notorious international tax havens. Through a series of complex and intricate transactions, the defendants sold millions of dollars worth of TelData stock, almost all of which sale proceeds they failed to disclose on their respective tax returns. Additional evidence presented by the government revealed how both defendants assisted Mosa in the filing of false tax returns which misrepresented as belonging to Mosa income properly attributable to the defendants. This evidence, evaluated in the light most favorable to the prosecution, supports the jury's verdict.
 
 
 12
 Defendants deny that they ever conspired for tax purposes. Anshen argues that there is no testimony indicating that he and Candelaria entered into any agreement to defraud the IRS. The existence of a conspiratorial agreement or common purpose properly may be inferred from the evidence, however, and this court is to view all inferences reasonably drawn from the evidence in the light most favorable to the government. United States v. Krasovich, 819 F.2d 253, 255 (9th Cir.1987). Under this level of scrutiny, a reasonable jury could infer that the defendants had entered into an agreement, and that tax fraud was one of the objectives. See Ingram v. United States, 360 U.S. 672, 679-80 (1959) ("A conspiracy, to be sure, may have multiple objectives, and if one of its objectives, even a minor one, be the evasion of federal taxes, the offense is made out, though the primary objective may be concealment of another crime."). While the government must prove both defendants' knowledge of the tax-based objectives of the conspiracy, and an actual agreement as to that specific objective, see Krasovich, 819 F.2d at 255, such knowledge and agreement can be inferred from the evidence presented to the jury. Defendants argued to the jury that they had never conspired for tax purposes nor entered into an agreement for that specific purpose, but the evidence presented by the government was sufficient to support the jury verdict.
 
 
 13
 II. Errors in Jury Instructions and Improper Limitations on Cross-Examination of Key Witnesses
 
 A. Jury Instructions
 
 14
 Defendants argue that the district court erred in its instruction of the jury in three different ways. First, defendant Candelaria argues that the court erred in failing to instruct the jury on his theory of the case, or more specifically, that the court improperly refused to give his requested instructions on "good faith," reliance on the advice of counsel/accountant, and negligence. Second, both defendants argue that it was reversible error for the district court to refuse to give a specific unanimity instruction, given the nature of the indictment, the factual complexity of the case, and the high likelihood of jury confusion. Third, defendants argue that the court erred by failing to give a requested instruction that the jury had to find beyond a reasonable doubt that each defendant acted with "specific intent" to violate the tax laws with respect to counts four and five, the willfully aiding and assisting in the filing of a false tax return charges.
 
 
 15
 While there is some uncertainty whether a district court's denial of a proposed jury instruction is reviewed de novo or for an abuse of discretion, see United States v. Streit, 962 F.2d 894, 897 (9th Cir.1992), proper identification of the issue in dispute usually resolves the question. See United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir.1992) ("the question turns on the issue for review").
 
 
 16
 We reverse because the district court failed to give requested instructions to which the defendants were entitled as a matter of law, and because the errors were not harmless.
 
 
 17
 1. Defendants' Theory of the Case Instructions
 
 
 18
 Candelaria argues that the district court erred by failing to give critical defense theory instructions relating to (1) "good faith," (2) reliance on counsel/accountant, and (3) negligence. The government contends that there were insufficient facts presented to warrant the instructions. Where the parties dispute whether the required factual foundation exists to warrant the requested jury instructions, we review the district court's denial of such instructions for an abuse of discretion. Gomez-Osorio, 957 F.2d at 642.
 
 
 19
 A criminal defendant is entitled to a jury instruction on any theory which provides a legal defense to the charges against him so long as there is "some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." United States v. Yarbrough, 852 F.2d 1522, 1541 (9th Cir.), cert. denied, 488 U.S. 866 (1988). Where a defendant's requested instruction is supported by some evidence, a trial court's refusal to give it is automatically reversible error and can never be considered harmless error. United States v. Sotelo-Murillo, 887 F.2d 176, 178 (9th Cir.1989); United States v. Escobar de Bright, 742 F.2d 1196, 1201 (9th Cir.1984).
 
 
 20
 Sufficient evidence was produced to require the giving of defendant's "good faith" instruction, which was drawn from Cheek v. United States, 111 S.Ct. 604 (1991). Candelaria repeatedly testified that he believed his stock sales had been properly reported to the IRS, either by him on his returns or by Anshen or Mosa. The Supreme Court has made clear that a defendant's "good faith belief that he was not violating any of the provisions of the tax laws" may properly rebut the government's charge that the defendant "willfully" violated tax laws. Id. at 610-11. As in Cheek, if the jury was persuaded by Candelaria's testimony that he truly believed he was not violating the tax laws, "the Government would not have carried its burden to prove willfulness, however unreasonable a court might deem such a belief." Id. at 611. Clearly "some" evidence was introduced supporting Candelaria's request for a "good faith" instruction. Thus, it was reversible error for the district court not to give that instruction to the jury.
 
 
 21
 The district court's refusal to give Candelaria's requested instructions on reliance and negligence was also reversible error since some evidence was produced as to those theories as well. Both instructions were properly drawn from United States v. Claiborne, 765 F.2d 784, 797-98 (9th Cir.1985). Again, the government does not challenge the legal basis for the instructions, but instead claims that the facts in the record are insufficient to support the instruction. As to the reliance instruction, Candelaria testified that (1) he relied on advice of Anshen, an attorney, who told him their tax reporting means were legally adequate, and (2) he relied on his accountant, who mistakenly failed to report Candelaria's Bahamian accounts even though Candelaria fully disclosed the accounts to him. We need not decide whether Candelaria had in fact established an attorney-client relationship with Anshen giving rise to the potential for his taking refuge behind a "reliance on the advice of counsel" instruction. That was jury work. Further, Candelaria's testimony was sufficient to entitle him to a "reliance on the advice of an accountant" instruction. See id. at 798 ("[A] defendant may rebut the Government's proof of willfulness by establishing good faith reliance on a qualified accountant after full disclosure of tax related information.").
 
 
 22
 On the negligence instruction, Candelaria correctly argues that evidence produced by both the government and the defendants revealed that the defendants were exceedingly sloppy in their business transactions. As the court in Claiborne clarified, "neither a careless disregard whether one's actions violate the law nor gross negligence in signing a tax return will suffice" to prove "willfulness" under § 7206(1). 765 F.2d at 798. We thus find that there was ample testimony in the record entitling the defendants to a negligence instruction. Even though the district court may have viewed that evidence as weak or lacking credibility, the defendants provided the requisite foundation of evidence that required the court to give the requested defense instructions or a variant thereof. We conclude that reversal is required in order to protect the defendant's basic right to a fair trial. See Escobar de Bright, 742 F.2d 1196, 1201 (9th Cir.1984).
 
 2. Specific Unanimity Instruction
 
 23
 In a routine case involving multiple counts or schemes, a defendant's Sixth Amendment right to a unanimous jury verdict may be protected through a general unanimity jury instruction. United States v. Echeverry, 719 F.2d 974, 974-75 (9th Cir.1983). A general unanimity instruction will not suffice, however, where "there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts." Id. at 975. This court has described three situations calling for a specific unanimity instruction: (1) where "the jury actually indicates, by note to the court, that it is confused about the nature of the conspiracy charged"; (2) where "the indictment is sufficiently broad and ambiguous so as to present a danger of jury confusion"; and (3) where "the evidence is sufficiently factually complex to indicate that jury confusion may occur." United States v. Anguiano, 873 F.2d 1314, 1319-20 (9th Cir.1989).
 
 
 24
 Defendants argue that this case implicates the second and third categories since the indictment was broad and ambiguous, and the evidence was so factually complex that juror confusion was likely. The government counters that the general unanimity instruction given to the jury was adequate because (1) the case was "simple to understand," and (2) the government relied on only one objective of defendant's conspiracy, namely to impair and impede the IRS in its determination and collection of taxes. The government's argument is not persuasive.
 
 
 25
 First, the government improperly attempts to focus this court's attention on its view of the complexity of the case and the fact that it relies on only one objective of defendants' conspiracy. Instead, in determining whether a specific unanimity instruction should have been given, courts are to look at the case from the jury's perspective. The key determinant is the likelihood of juror confusion, given the factual complexity of the case and the breadth and ambiguity of the indictment. Factually, this case is very complex, involving multiple alleged schemes to defraud various entities (e.g., the IRS, the Nevada gaming commission, TelData shareholders). Further, the indictment is sufficiently obtuse and ambiguous, giving rise to a likelihood of juror confusion and a significant possibility that defendants' constitutional right to a unanimous jury verdict would be compromised.
 
 
 26
 Because the underlying issue is factual in nature--whether the evidence was factually complex, or the indictment broad and ambiguous so as to require a specific unanimity instruction--abuse of discretion is the appropriate standard of review. See Gomez-Osorio, 957 F.2d at 642. We hold that the district court abused its discretion by failing to give the specific unanimity instruction that the defendants' requested. Further, because the right to a unanimous jury verdict is constitutional, a district court's improper failure to give a specific unanimity instruction is reversible unless the error is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18 (1967). We find reversal required here because the district court's error cannot be deemed harmless beyond a reasonable doubt.
 
 
 27
 3. Specific Intent to Violate the Tax Laws Instruction
 
 
 28
 Defendants argue that the district court erred in not giving their requested instruction requiring that the jury find they acted with "specific intent" to defraud the IRS in order to convict them under 26 U.S.C. § 7206(2) for aiding and assisting in the preparation of false returns. Defendants rely upon United States v. Salerno, 902 F.2d 1429 (9th Cir.1990), a conspiracy case which held that in order to convict a defendant of a violation of § 7206(2), the government must prove the defendant "acted with specific intent to defraud the government in the enforcement of its tax laws." Id. at 1432. Defendants argue that reversal is appropriate because the jury was not properly instructed that it was required to find willfulness.
 
 
 29
 We review the district court's "formulation of the instructions and choice of language" for an abuse of discretion. Streit. 962 F.2d at 898. In general, the district court has "broad discretion in formulating the precise language of jury instructions," and a defendant "is not entitled to any particular form of an instruction so long as the instructions given fairly and adequately cover the defendant's theory of the case." United States v. Solomon, 825 F.2d 1292, 1295 (9th Cir.1987).
 
 
 30
 On counts four and five pertaining to § 7206(2), the district court instructed the jury that it must find that the defendants "did the acts complained of and of which they stand charged (Counts 4 and 5). You must also find the acts were done willfully." The district court then defined "willfully" as acting "voluntarily and intentionally and with the specific intent to do something the law forbids." Thus, the district court's jury instruction was sufficient, even though its instruction is less concrete than defendant's requested instruction, particularly regarding the requirement that the jury find defendants acted with specific intent to violate the tax laws, and not merely Nevada gaming laws or laws against stock manipulation. We conclude that the district court's instruction on willfulness and specific intent was not reversible error.
 
 B. Cross-Examination of Key Witnesses
 
 31
 Candelaria contends that the district court impermissibly limited cross-examination of two key government witnesses: Bahamian investment banker, Graham Tyers, and government summary tax witness, Agent Barton. A trial court has " 'considerable discretion to limit cross-examination to prevent delay or avoid cumulative evidence.' " Carriager v. Lewis, 971 F.2d 329, 333 (9th Cir.1992) (en banc) (quoting United States v. Gomez, 846 F.2d 557, 559 (9th Cir.1988)). The district court's limitation of cross-examination is reviewed for an abuse of discretion. United States v. Bonanno, 852 F.2d 434, 439 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989). " 'The trial court does not abuse its discretion as long as the jury receives sufficient information to appraise the biases and motivations of the witness.' " United States v. Guthrie, 931 F.2d 564, 568 (9th Cir.1991) (quoting United States v. Feldman, 788 F.2d 544, 554 (9th Cir.1986), cert. denied, 479 U.S. 1067 (1987)); see also United States v. Brown, 936 F.2d 1042, 1048 (9th Cir.1991) (defendant is not empowered "to pursue irrelevant inquiries or exercise complete control over the extent of cross-examination").
 
 
 32
 While the district court did limit defense counsel's cross-examination of witnesses Tyers and Barton, the record reveals that the jury nonetheless received sufficient information to appraise the biases and motivations of the witnesses. For example, Candelaria elicited from Tyers information concerning his role and stake in TelData, including the fact that he was a "major shareholder." Moreover, Candelaria's offer of proof covered testimony already substantially elicited from Tyers. Similarly, the questions to Barton, the government's summary tax witness, sufficiently probed his analysis and methods used in preparing his summary. Barton repeatedly testified that he had reviewed only what had been entered in evidence. The court properly limited the otherwise cumulative, argumentative cross-examination.
 
 
 33
 Based on our review of the trial record, we therefore believe that the jury received "sufficient information to appraise the biases and motivations" of the key government witnesses. Feldman, 788 F.2d at 554.
 
 
 34
 III. Admission of Defendants' Histories of Alleged Under-Reporting Income or Failing to File Tax Returns as Evidence of Their Intent to Defraud the IRS
 
 
 35
 As an additional ground for reversal, defendants argue that the district court improperly admitted into evidence under Federal Rule of Evidence 404(b) summary tax transcripts reflecting the defendants' tax histories.[2] We agree.
 
 
 36
 We review the district court's decision to include the defendants' tax histories as evidence of their intent to defraud the IRS for an abuse of discretion. United States v. Ayers, 924 F.2d 1468, 1474 (9th Cir.1991); United States v. Ross, 886 F.2d 264, 267 (9th Cir.1989). In assessing the admissibility of such prior bad acts evidence under Rule 404(b), this court applies a four-part test, analyzing whether (1) sufficient evidence exists for the jury to find that the defendant committed the other acts; (2) the other acts were properly introduced to prove a material issue in the case; (3) the other acts are not too remote in time; and (4) in cases like this one where the evidence is admitted to prove intent, the other acts are similar to the offense charged. United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir.1991). Even if all four parts of this test are satisfied, "the evidence may still be excluded under Rule 403." United States v. Miller, 874 F.2d 1255, 1268 (9th Cir.1989).
 
 
 37
 First, we doubt whether the government introduced sufficient evidence for a jury to conclude that the defendants in fact committed the prior bad acts of willfully under-reporting income or willfully failing to file a return when the defendants had a duty to do so. See Huddleston v. United States, 485 U.S. 681, 689 (1988); United States v. Ayers, 924 U.S. 1468, 1473 (9th Cir.1991). The government asserts that it presented evidence which reveals that both Candelaria and Anshen had previously received substantial funds which were never reported on their tax returns.[3] The prior bad acts evidence itself, however, constitutes short summaries of the defendants' filing history revealing only whether the defendants filed a tax return in a given year, and if so, how much they paid in taxes. In and of itself, this tax data proves next to nothing. On its face, it fails to reflect a law violation. The defendants could have received income in a given year, but their failure to file a return, or their payment of small amounts in taxes, would not, without other evidence, mean that the defendants committed criminal tax violations.
 
 
 38
 Moreover, because the government seeks to admit prior bad acts evidence to prove defendants' intent to defraud the IRS, the prior bad acts evidence must be similar to the charged offenses. See United States v. Ramirez-Jiminez, 967 F.2d 1321, 1326 (9th Cir.1992) (similarity of the prior acts to the charged offenses is required because "if the prior act is not similar, it does not tell the jury anything about what the defendant intended to do in his later action"). For the prior bad acts to be similar here, the government must present sufficient evidence that the defendants acted with the requisite intent to defraud the IRS when they allegedly committed the prior bad acts. See United States v. Cuozzo, 962 F.2d 945, 949 (9th Cir.1992) (Rule 404(b)'s requirements not met where government failed to provide sufficient facts of defendant's prior allegedly fraudulent dealings since failed to prove that the prior acts were committed with the requisite fraudulent intent). Prior bad acts evidence that reflects merely suspicious circumstances is not admissible in a criminal trial where the defendant has no burden of proof.
 
 
 39
 But even assuming that the requirements of Rule 404(b) were satisfied, "that does not mean that the evidence was properly received." United States v. Miller, 874 F.2d 1255, 1270 (9th Cir.1989). Evidence of the defendants' poor tax history to prove their intent to defraud the IRS was properly admissible " 'only if, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant.' " United States v. Ayers, 924 F.2d 1468, 1474 (quoting United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir.1985)).[4] Even if we concede that the tax transcripts were relevant to show the defendants' intent, their slight probative value was outweighed by the extreme potential for prejudice.[5]
 
 
 40
 The district court's abuse of discretion by admitting the summaries of defendants' tax histories requires reversal because we cannot say that it is more probable than not that the error did not affect the jury's verdict. United States v. Brown, 880 F.2d 1012, 1026 (9th Cir.1989). As in Brown, references made in the government's closing arguments "make it impossible for [the court] to say it is more likely than not that [the error] did not affect the jury's verdict." Id. In fact, review of the full record raises a question whether the very purpose of Rule 404(b) was not undermined. The jury may have convicted the defendants, when guilt for the crimes charged was unclear, merely because they were convinced the defendants are bad men deserving of punishment, see United States v. Hill, 953 F.2d 452, 457 (9th Cir.1991)--or as the government argued to the jury, "liars and cheaters in all walks of life."[6]
 
 
 41
 The numerous errors noticed above require a new trial for the surviving defendant.
 
 
 42
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 This court received notice that defendant Anshen died on January 12, 1993
 
 
 [2]
 Over objection, the district court admitted evidence reflecting the tax histories of the defendants. The government introduced IRS "Certificates of Assessment and Payments" for Candelaria tracing back to 1966, and for Anshen from 1979 through 1987. The documents consisted of computerized records of defendants' filing history in summary form, not defendants' tax returns themselves. The government asserts these documents revealed the defendants' under-reporting of income and/or failure to file, and that this evidence was properly introduced to establish the defendants' intent, going to their "willfulness" to defraud the IRS. Defendants counter that the documents constitute impermissible character evidence introduced in violation of Rule 404(b)
 
 
 [3]
 The government introduced excerpts of Candelaria's sworn deposition testimony taken in another case from which it might be inferred that Candelaria had substantial income from employment and other sources that the government alleges he failed to report on any of his prior tax returns. Similarly, as to Anshen, the government suggests that Anshen received over a million dollars in TelData stock in lieu of salary and that Anshen never reported this income to the IRS
 
 
 [4]
 The record reveals that the court did not explicitly balance the probative value against the danger of unfair prejudice nor expressly rule on the issue. While we may infer that the court implicitly conducted the Rule 403 balancing, on remand, "we remind the district court that its duty to weigh the factors explicitly maintains the appearance of justice by showing the parties that the court recognized and followed the dictates of the law, and facilitates immeasurably the process of appellate review." United States v. Johnson, 820 F.2d 1065, 1069 n. 2 (9th Cir.1987)
 
 
 [5]
 Defendants additionally argue that the district court's failure to give an adequate limiting instruction requires reversal. The record reveals, however, that defense counsel failed to provide the court with an adequate limiting instruction and failed to object to the weak instruction the court in fact gave. Under these circumstances, any error resulting from the court's failure to give an adequate limiting instruction is waived. See Lucero v. Stewart, 892 F.2d 52, 56 (9th Cir.1989)
 
 
 [6]
 Defendants additionally argue in the alternative that even if no single error requires reversal, cumulatively the district court's rulings in this case were so prejudicial that the defendants were not fairly tried and reversal is appropriate due to the combined impact of the errors. See United States v. McLister, 608 F.2d 785, 791 (9th Cir.1979). Since we conclude that reversal is appropriate due to some of the district court's specific errors in instructing witnesses and admitting evidence, we do not address defendants' attempted reliance on this amorphous doctrine