107 F.3d 18
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael MANGIARDI, Defendant-Appellant.
 No. 96-50141.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 11, 1996.
Decided Feb. 04, 1997.
 
 Before: FARRIS, BEEZER and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Michael Mangiardi appeals his wire fraud and money laundering convictions as well as the sentence imposed for those convictions. He challenges the district court's jury instructions and cross-examination restrictions, the sufficiency of the government's evidence and the district court's guideline findings. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * Mangiardi first seeks reversal on the grounds that the district court erred in instructing the jury on both the wire fraud and money laundering counts. A district court's formulation of jury instructions is reviewed for an abuse of discretion. United States v. Chastain, 84 F.3d 321, 323 (9th Cir.1996). Whether a jury instruction misstates an element of a statutory crime is a question of law reviewed de novo. United States v. Tegalicud, 84 F.3d 1180, 1183 (9th Cir.1996). We review jury instructions as a whole to determine if they are misleading or inadequate to guide the jury's deliberations. United States v. Kessi, 868 F.2d 1097, 1101 (9th Cir.1989).
 
 
 4
 Mangiardi first attacks the district court's wire fraud instruction. He claims that the district court erred in instructing the jury that it could find an "intent to defraud" based on the defendant's "reckless disregard" for the truth. Mangiardi also claims that this error created an unconstitutional inference in violation of his due process rights. At trial, Mangiardi objected, in writing, to the district court's intent instructions.
 
 
 5
 * A conviction for wire fraud under 18 U.S.C. § 1343 requires a showing, beyond a reasonable doubt, that the defendant: "(1) used or caused the use of the ... telephone in interstate commerce; (2) in furtherance of a scheme to defraud; (3) with the intent to defraud." United States v. Bonanno, 852 F.2d 434, 440 (9th Cir.1988).[1] At issue is whether the district court correctly defined the statute's intent element.
 
 
 6
 The challenged instruction reads as follows:
 
 
 7
 An intent to defraud may be demonstrated by the scheme itself. Similarly, the Defendant's knowledge of a false statement or reckless indifference to its truth or falsity can demonstrate an intent to defraud.
 
 
 8
 This instruction, read either in isolation or in conjunction with the remaining instructions, properly defines § 1343's intent requirement; the district court did not err. We recently endorsed a similar § 1343 instruction as "more than adequately reflect[ing] the definition of intent to defraud, as Congress intended it, under 18 U.S.C. §§ 1341 and 1343." United States v. Dees, 34 F.3d 838, 842 (9th Cir.1994).
 
 
 9
 Mangiardi's reliance on United States v. McAllister, 747 F.2d 1273 (9th Cir.1984), and United States v. Aguilar, 80 F.3d 329 (9th Cir.1996) is unavailing. Neither case deals with a "reckless disregard" instruction.
 
 B
 
 10
 Mangiardi also claims that the "intent to defraud" instruction created an unconstitutional presumption. He asserts this claim without elaboration, contending only that the district court's intent instruction shifted the burden of proof, thus requiring Mangiardi to prove affirmatively that he was not recklessly indifferent to the truth of his statements. We review de novo whether an instruction violates due process by creating an unconstitutional presumption or inference. United States v. Warren, 25 F.3d 890, 897 (9th Cir.1994).
 
 
 11
 Jury instructions can create either a mandatory or permissive inference, and either may violate the Constitution. United States v. Washington, 819 F.2d 221, 225 (9th Cir.1987). A mandatory inference instruction requires the jury to find a particular element satisfied if the government proves certain predicate facts, unless the defendant rebuts the inference. Warren, 25 F.3d at 897. "A permissive inference instruction allows, but does not require, a jury to infer a specified conclusion if the government proves certain predicate facts." Id. Permissive instructions do not shift the burden of proof, but they may nonetheless be unconstitutional "if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." Id. (quoting Francis v. Franklin, 471 U.S. 307, 314-15 (1985) (citations omitted)).
 
 
 12
 Mangiardi challenges the following instructions:
 
 
 13
 An intent to defraud may be demonstrated by this scheme itself. Similarly, the Defendant's knowledge of a false statement or his reckless indifference to its truth or falsity can demonstrate an intent to defraud.
 
 
 14
 An act is done knowingly if the Defendant is aware of the act and does not act through ignorance, mistake, or accident. The Government is not required to prove that the Defendant knew that his acts or omissions were unlawful. You may consider evidence of the Defendant's words, acts or omissions, along with all the other evidence, in deciding whether the Defendant [acted] knowingly.
 
 
 15
 A promise is false if it is made with no intention of keeping it, or if it is made recklessly without a good faith basis for believing that it can be fulfilled.
 
 
 16
 The language of these instructions is necessarily permissive. The court uses terms such as "may" and "can" in describing the proposed inferences, which suggest a conclusion without mandating one. See, e.g., Warren, 25 F.3d at 898 (language such as "[jury] may find" creates a permissive inference instruction); Washington, 819 F.2d at 225-26 (same).
 
 
 17
 Moreover, read as a whole the instructions mitigate any inference or prejudice created by the inference instructions. See Warren, 35 F.3d at 898. The district court repeatedly told the jury that it must find each and every element beyond a reasonable doubt and that it was "entirely up to [the jury] ... to decide what facts to find from the evidence received during trial." Both the frequency and proximity of these admonitions cured any improper inference that may have arisen from the instructions identified by Mangiardi. See Warren, 25 F.3d at 898.
 
 
 18
 As noted, permissive inference instructions can violate the Constitution. We review the constitutionality of a permissive inference instruction on a case-by-case basis. Id. At issue is whether the instruction given, coupled with the evidence presented at trial, justifies the inferences suggested by the instructions, such as, for example, that Mangiardi's intent can be established by the "[fraudulent] scheme itself" or by reckless indifference.
 
 
 19
 The jury must have been able to infer from Mangiardi's employment, management and involvement in Select Service National Credit ("SSNC") that he knew its activities were fraudulent. There was conflicting testimony on the issue of Mangiardi's knowledge of any fraud at the "loan rooms." Because the "loan room" schemes and Mangiardi's connection to these operations were fully detailed at trial, however, a rational jury could arrive at the inferences implied by the instructions. See id. at 898 (citing County Court of Ulster County, N.Y. v. Allen, 442 U.S. 140, 157 (1979)).
 
 
 20
 Finally, the district court's instructions, although not unconstitutional, might still be defective if they mislead or confuse the jury, or if they intrude on the deliberative process. United States v. Rubio-Villareal, 967 F.2d 294, 297 (9th Cir.1992) (en banc). For example:
 
 
 21
 [a] permissive inference instruction can impermissibly intrude upon a jury's exclusive role as fact finder by suggesting that the judge believes there is sufficient evidence to convict.
 
 
 22
 Warren, 25 F.3d at 899 (citing Rubio-Villareal, 967 F.2d at 299-300). Such inferences, or perceived inferences, are cured when the permissive instruction is tempered by surrounding instructions. An example of an instruction which dissipates the influence of a permissive inference instruction is one which proclaims the jury the exclusive finder of fact and instructs the jury to make only the inferences it chooses. Id. As noted, the district court gave such instructions in this case.
 
 II
 
 23
 Mangiardi next attacks the money laundering instructions on the basis that they did not state that the proceeds used for the alleged "financial transaction" must be the same proceeds gained from the alleged "specific unlawful activity." Because Mangiardi did not object to these instructions before the district court, we review only for plain error. United States v. Wright, 742 F.2d 1215, 1222 (9th Cir.1984). "Plain error" is clear or obvious error, and may be reversed on appeal only if the error affected a defendant's substantial rights. United States v. Olano, 507 U.S. 725, 734-35 (1993).
 
 
 24
 The district court correctly instructed the jury as to each element of money laundering under § 1956(a)(1)(A)(i) and required that the jury find each elements beyond a reasonable doubt.[2] The district court instructed:
 
 
 25
 Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of a specified unlawful activity is guilty of an offense against the United States.
 
 
 26
 In order for the Defendant Michael Mangiardi to be found guilty of this charge, the Government must prove each of the following elements beyond a reasonable doubt:
 
 
 27
 First, the Defendant Michael Mangiardi conducted a financial transaction involving property that represented the proceeds of the wire fraud;
 
 
 28
 Second, the Defendant Michael Mangiardi knew that the property represented the proceeds of wire fraud; and,
 
 
 29
 Third, the Defendant Michael Mangiardi acted with the intent to promote the carrying on of wire fraud.
 
 
 30
 A financial transaction is a transaction involving one or more monetary instruments or the use of a financial institution which is engaged in or the activities of which affect interstate or foreign commerce in any way.
 
 
 31
 Writing a check, whether for cash or to a vendor for services for a business, falls within the definition of a financial transaction in the money laundering statute.
 
 
 32
 An intent to disguise or thwart the detection of the source or purpose of monies deposited into a bank account is not a required element of the charge of money laundering based on promotion and carrying on of specified unlawful activity.
 
 
 33
 Wire fraud is a specified unlawful activity, and therefore monies derived from a wire fraud scheme are the proceeds of a specific unlawful activity.
 
 
 34
 A person may violate the law even though he does not personally do each and every act constituting the offense if that person aided and abetted the commission of the offense.
 
 
 35
 Mangiardi claims that these instructions do not properly inform the jury that the proceeds used to perpetrate the fraud must be those proceeds gained from the alleged wire fraud. This argument lacks merit. The district court's instructions clearly required that the "financial transaction" in question "involve[ ] property that represented the proceeds of the wire fraud." The second element required that Mangiardi know that the proceeds used in the financial transaction "represented proceeds of wire fraud." These instructions can only be read to require that the proceeds from the financial transaction at issue be the same proceeds realized from the wire fraud.
 
 
 36
 Mangiardi's argument that the jury was not instructed that the proceeds of the wire fraud must be those proceeds used to "promote the carrying on" of the same wire fraud also contradicts the language of the instructions. The "act" referred to in the "intent to promote" instruction necessarily refers to the "financial transaction" named in the first element, which specified that the proceeds at issue be derived from wire fraud. It is this act which must promote wire fraud. To the extent that the wire fraud promoted must be the same as the source of the proceeds for the financial transaction, a requirement not apparent from a plain reading of the statute, the jury could not have reached a conclusion contrary to this premise under the evidence presented at trial. That is, the financial transaction alleged in the money laundering count, the payment of funds to North American Acceptance Exchange ("NAAE"), both derives from and promotes the underlying wire fraud committed through the "loan room" scams.
 
 
 37
 Mangiardi's remaining objection to the jury instructions amounts to a restyled attack on what he perceives to be an inconsistent jury verdict; this argument is unreviewable. Mangiardi contends that the jury's acquittal verdict on the wire fraud counts relating to SSNC, Counts 1-5, necessitates an acquittal on the Count 25 money laundering charge, which also related to SSNC. Although this conclusion is not apparent from the jury verdict, we need not attempt to interpret the jury's verdict because criminal defendants are precluded from attacking a conviction simply because the jury verdict of guilty on one count is inconsistent with the verdict of not guilty on another. United States v. Powell, 469 U.S. 57, 64-69 (1984); United States v. Hughes Aircraft Co., Inc., 20 F.3d 974, 977-78 (9th Cir.), cert. denied, 115 S.Ct. 482 (1994).
 
 III
 
 38
 Mangiardi also argues that the district court erred by precluding him from cross-examining witness Joseph Tusia concerning whether Tusia had previously jumped bail in other criminal cases. Mangiardi claims that this restriction violated his rights under the Sixth Amendment's Confrontation Clause.
 
 
 39
 We review a district judge's decision to limit cross-examination for abuse of discretion. Bonanno, 852 F.2d at 439. Whether cross-examination restrictions violate the Sixth Amendment's Confrontation Clause is a legal question that we review de novo. United States v. Vargas, 933 F.2d 701, 704 (9th Cir.1991). A violation of the Confrontation Clause, including a violation of the defendant's right to cross-examine and impeach a witness, is subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).
 
 
 40
 Mangiardi asked the district court for permission to cross-examine Tusia as to Tusia's pending bail jumping charges. Mangiardi sought to explore the bail jumpings in the context of Tusia's plea agreement with the government. The government argued that no promises had been made to Tusia as to any pending bail jumping charges. The district court ruled that Mangiardi could not cross-examine on this issue, as admission of this testimony was not authorized by Federal Rule of Evidence 609.[3] The district court also noted the bail jumping was a "collateral issue."
 
 
 41
 The Confrontation Clause guarantees a criminal defendant the opportunity to cross-examine witnesses effectively and reveal their motivations and biases. Van Arsdall, 475 U.S. at 678-79. This right is not absolute and often runs counter to the district court's broad discretion in limiting the scope of cross-examination. "Generally, once cross-examination reveals sufficient information with which to appraise a witness's possible bias and motives, confrontation demands are satisfied." Bonanno, 852 F.2d at 439. A district judge may restrict the scope of cross-examination when questioning is "repetitive or only marginally relevant." United States v. Dadanian, 818 F.2d 1443, 1449 (9th Cir.1987), modified in unrelated part, 856 F.2d 1391, 1392 (1988).
 
 
 42
 The district court imposed restrictions which did not violate Mangiardi's Confrontation Clause rights. While the court restricted Mangiardi's cross-examination as to the bail jumpings, the court allowed Mangiardi to otherwise explore the issue of Tusia's plea agreement and his expectations of leniency based on that agreement. Mangiardi also questioned Tusia on a wide range of Tusia's other past "bad acts," which significantly compromised Tusia's credibility. Tusia testified, for example, that he had been involved in fraudulent activity in as many as five other states, indicted several times for fraud, that he developed an expertise in running fraudulent "loan rooms" and spent the last five years lying and cheating. He testified that he had not been legitimately employed since 1992 and had not filed an income tax return since either 1987 or 1988. Tusia also admitted that he gambled heavily. Allowing Mangiardi to question Tusia as to his bail jumping charges would not have added much to the already significant discussion of Tusia's plea agreement and credibility. See United States v. Guthrie, 931 F.2d 564, 568-69 (9th Cir.1991).
 
 
 43
 A question remains as to whether the district court properly restricted Tusia's cross-examination under the Federal Rules of Evidence. The district court may have erred in precluding questions regarding Tusia's bail jumpings. Mangiardi sought to question Tusia not about past convictions, but rather about his prior "bad acts." Mangiardi's inquiry into specific instances of misconduct may have been permissible if the question of Tusia's bail jumping was considered probative of bias. See United States v. Ray, 731 F.2d 1361, 1364 (9th Cir.1984).
 
 
 44
 Nonetheless this issue does not merit extensive analysis because any error that the district court may have committed in restricting cross-examination of Tusia is harmless. In determining whether an error is harmless, we consider:
 
 
 45
 the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and ... the overall strength of the prosecution's case.
 
 
 46
 United States v. Baker, 10 F.3d 1374, 1405-06 (9th Cir.1993) (quoting Van Arsdall, 475 U.S. at 684), cert. denied, 115 S.Ct. 330 (1994). Here, the defense's otherwise extensive cross-examination of Tusia revealed significant evidence as to his motivation and potential bias in testifying such that further questioning about Tusia's bail jumping charges could not have provided significant new information.
 
 IV
 
 47
 Mangiardi next argues that the government failed to present sufficient evidence to support his money laundering conviction under 18 U.S.C. § 1956(a)(1)(A)(i). Specifically, Mangiardi attacks the government's "intent" evidence. There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Vgeri, 51 F.3d 876, 879 (9th Cir.1995) (citations omitted).
 
 
 48
 The Indictment charged that Mangiardi promoted wire fraud by sending a $3,750 check to NAAE as payment for "turn down" services. To convict Mangiardi for money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), the government must prove beyond a reasonable doubt that he:
 
 
 49
 (1) engaged in a financial transaction which involved proceeds from specified illegal activity, (2) knew the proceeds were from illegal activity, and (3) intended the transaction either to promote the illegal activity or to conceal the nature, source, or ownership of the illegal proceeds.
 
 
 50
 United States v. Marbella, 73 F.3d 1508, 1514 (9th Cir.), cert. denied sub nom. Amigable v. United States, 116 S.Ct. 2555, (1996). The "financial transaction" at issue is Mangiardi's payment to NAAE; the "specified illegal activity" is the alleged wire fraud perpetrated by Mangiardi through SSNC and its predecessors.
 
 
 51
 The government presented sufficient evidence to allow a jury to conclude beyond a reasonable doubt that Mangiardi intended to promote illegal activity. Mangiardi paid NAAE to compensate it for its "turn down" services, and in turn to perpetuate, and thus promote, wire fraud through the "loan room" operations. See, e.g., id. at 1514 (defendant's payment of fee encouraged future fraudulent transactions activity); Baker, 63 F.3d at 1494 (defendant's payment of suppliers promoted continued illegal trafficking).
 
 
 52
 Whether Mangiardi knew that NAAE was engaged in fraud itself is immaterial to § 1956(a)(1)(A)(i)'s intent requirement. The illegal activity promoted was the wire fraud perpetrated by the various "loan rooms," not the promotion of NAAE's fraudulent "turn down" services. The relevant inquiry is whether Mangiardi intended to promote fraud. As noted, the payment to NAAE did advance SSNC's wire fraud scheme, even if only to continue to shield SSNC from exposure. See, e.g., United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir.1991) (depositing check evidenced intent to promote illegal activity because defendant could not have used the money for bribe had he not deposited the check), cert. denied, 116 S.Ct. 82 (1995). There is ample evidence to establish that Mangiardi knew of SSNC's fraud, participated in it, and sought to advance it in December of 1993. There is little or no evidence to support his contention that he paid NAAE only to insure that SSNC customers "were not cheated."
 
 
 53
 That SSNC no longer formally existed as of Mangiardi's December, 1993 payment to NAAE, as stipulated, is irrelevant. First, Mangiardi continued to deal with and profit from SSNC customers after December, 1993. Second, Mangiardi's December payment promoted continued wire fraud whether by SSNC or its successors, which were little more than renamed and relocated SSNC's.
 
 V
 
 54
 As we have affirmed Mangiardi's money laundering conviction we need not address his objections to the calculation of his wire fraud sentences because he was not specifically sentenced for these crimes. The district court sentenced Mangiardi only for his money laundering conviction because the court grouped Mangiardi's wire fraud and money laundering convictions together under § 3D1.3(a).
 
 
 55
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Title 18 U.S.C. § 1343, entitled "Fraud by wire, radio, or television" provides:
 Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
 
 
 [2]
 Title 18 U.S.C. § 1956, entitled "Laundering of monetary instruments," provides in relevant part:
 (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
 (A)(i) with the intent to promote the carrying on of specified unlawful activity.... shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.
 
 
 [3]
 Rule 609 entitled, "Impeachment by Evidence of Conviction of Crime," provides in relevant part:
 (a) General rule. For the Purpose of attacking the credibility of a witness,
 (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused had been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
 (2) evidence that any witness had been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.