UNITED STATES of America, Plaintiff–Appellee–Cross–Appellant,

v.

M.C.E., juvenile male, Defendant–Appellant–Cross–Appellee.

Nos. 99–30362, 99–30384.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 2, 2000.

Filed Nov. 3, 2000.

---

Robert H. Gombiner, Federal Public Defender, Tacoma, Washington, for the defendant-appellant/cross-appellee.

Robert Westinghouse, Assistant United States Attorney (argued), Leonie G.H. Grant, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee/cross-appellant.

Before: GOODWIN, ALARCON, McKEOWN, Circuit Judges.

McKEOWN, Circuit Judge:

We must decide whether residential burglary is a crime of violence that serves to trigger mandatory transfer to adult status under the federal juvenile crime statute, 18 U.S.C. § 5032. More specifically, we must determine whether "by its very nature [residential burglary] involves a substantial risk that physical force against the person of another may be used in committing the offense." *Id.* Based upon *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), *United States v. Becker*, 919 F.2d 568 (9th Cir. 1990), and numerous cases in other circuits, we hold that residential burglary is indeed a crime that carries with it a substantial risk of violence. Accordingly, we reverse the district court's denial of the

government's motion to transfer M.C.E. to adult status under the mandatory provision of 18 U.S.C. § 5032.

## BACKGROUND

In March 1999, taxi driver Donald R. Baker was found shot to death in his cab on the grounds of Fort Lewis Military Reservation, near Tacoma, Washington. Defendant–Appellant/Cross–Appellee M.C.E., then sixteen years old, was arrested about a month later and charged in federal court with an act of juvenile delinquency which, if committed by an adult, would have constituted a violation of 18 U.S.C. §§ 1111(a) and (b) (murder) in the special maritime and territorial jurisdiction of the United States. *See* 18 U.S.C. § 7(3).

Acting pursuant to 18 U.S.C. § 5032, the government moved to transfer M.C.E. to adult status. The government moved in the alternative for transfer under the mandatory and discretionary provisions of the statute. The district court bifurcated the proceedings, first considering the mandatory transfer motion. At the conclusion of the initial hearing, the court issued a tentative oral ruling denying the government's mandatory transfer motion, holding that M.C.E.'s prior conviction for residential burglary [1] did not qualify as a crime of violence and thus did not trigger a mandatory transfer under § 5032.

The court next took up the issue of discretionary transfer at a two-day hearing and, on August 16, 1999, formally denied the government's motion for mandatory

transfer, but granted the motion for discretionary transfer.

M.C.E. moved for reconsideration of the court's transfer order, asserting that the government had failed to turn over information suggesting that two of its witnesses at the transfer hearing had been involved in the murder. M.C.E. claimed that he would have taken the stand had the defense been aware of this information. The court granted the motion for reconsideration and held a new hearing on discretionary transfer. M.C.E.'s attorneys stated that they intended to have him testify, but first sought assurances from the court that, pursuant to § 5032, M.C.E's testimony could not be used against him in a subsequent criminal trial, either in the prosecution's case-in-chief, or for impeachment purposes. [2] Despite repeated prodding by M.C.E.'s attorneys, the court refused to expound further on the meaning of the relevant portion of § 5032. M.C.E. then decided not to testify. At the conclusion of the hearing, the court reaffirmed its earlier decision granting the government's motion for discretionary transfer.

■ Based on the court's refusal to make a definitive ruling on the subsequent impeachment issue, M.C.E. now appeals the district court's ruling granting the motion for discretionary transfer. The government cross-appeals the ruling denying its motion for mandatory transfer. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3731, and we reverse the district court's denial of the government's motion for mandatory transfer. [3]

---

1. M.C.E. pleaded guilty in 1997 to a residential burglary he committed when he was 14. RCW 9A.52.025, under which M.C.E. was convicted, provides,

   (1) A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle.
   (2) Residential burglary is a class B felony. In establishing sentencing guidelines and disposition standards, the sentencing guidelines commission and the juvenile disposition standards commission shall consider residential burglary as a more serious offense than second degree burglary.

Second degree burglary, defined at RCW 9A.52.030, is burglary of a building other than a vehicle or a dwelling.

2. The portion of 18 U.S.C. § 5032 at issue provides: "Statements made by a juvenile prior to or during a transfer hearing under this section shall not be admissible at subsequent criminal prosecutions."

3. An interlocutory appeal of a transfer order under § 5032 is permitted under the collateral order exception. *See United States v. Juvenile,* 228 F.3d 987, 2000 WL 1459370, *1 (9th Cir. Oct.3, 2000); *United States v. David H.,* 29 F.3d 489, 491 n. 2 (9th Cir.1994).

## DISCUSSION

### I. Section 5032

■ Section 5032 provides two alternate routes to adult criminal prosecution of a minor: mandatory and discretionary. *See United States v. David H.*, 29 F.3d 489, 490–92 (9th Cir.1994) (per curiam). The statute *requires* a transfer if "(1) the act charged was committed after the juvenile's sixteenth birthday, (2) the act would have been a felony involving the use of violence if committed by an adult, and (3) the juvenile had previously been found guilty of such an offense." [4] *Id.* at 490; *see also United States v. Juvenile*, 228 F.3d 987, 988–90 (9th Cir.2000).

■ There is no dispute here either that the murder charged was committed after M.C.E.'s sixteenth birthday or that it would have constituted a felony involving the use of violence if committed by an adult. The only issue is whether M.C.E.'s prior conviction for residential burglary under Washington law qualifies as a crime that "by its very nature [ ] involves a substantial risk that physical force against the person of another may be used in committing the offense." 18 U.S.C. § 5032.

■ As a preliminary matter, we note that, in analyzing this question, we do not look to the specific conduct underlying M.C.E.'s conviction. Rather, we must take the "categorical" approach, focusing narrowly on the elements of the crime, as defined by the statutory language. The court must not "look[ ] beyond the penal statute" to see whether the actual conduct of the juvenile resulted in violence or a substantial risk of violence in the particular case before the court. *David H.*, 29 F.3d at 493 (citing *Taylor*, 495 U.S. at 600–602, 110 S.Ct. 2143) (explaining categorical approach in the context of a sentence enhancement under 18 U.S.C. § 924(e)).

No other circuit court has yet addressed the specific issue whether residential burglary qualifies as a crime of violence for the purposes of § 5032. But we are not sailing here on uncharted waters. Numerous other courts have analyzed, in different contexts, whether residential burglary is a crime of violence. Courts that have faced this question have come to the conclusion (unanimous, so far as we can tell) that residential burglary is indeed a crime of violence, because the perpetrator's unlawful entry into a dwelling with intent to commit a crime therein creates a substantial risk that he may encounter the lawful occupant, or perhaps an investigating police officer, thus resulting in a violent confrontation. *See, e.g., Taylor*, 495 U.S. at 588, 110 S.Ct. 2143 ("The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate. And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape.") (applying 18 U.S.C. § 924(e) (sentencing enhancement for "armed career criminals")); *United States v. Becker*, 919 F.2d 568, 573 (9th Cir.1990) ("The confluence of common sense and precedent lead to the conclusion that the unauthorized daytime entry of the dwelling of another with the intent to commit a larceny or any felony carries with it a substantial risk that force will be used against the

4. The mandatory transfer provision provides, in relevant part,

[A] juvenile who is alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony offense that has as an element thereof the use, attempted use, or threatened use of physical force against the person of another, *or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense,* ... and who has previously been found guilty of an act which if committed by an adult would have been one of the offenses set forth in this paragraph or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed, shall be transferred to the appropriate district court of the United States for criminal prosecution. 18 U.S.C. § 5032 (emphasis added).

person or property of another.") (applying 18 U.S.C. § 924(e) and California first degree burglary statute (Cal.Penal Code § 460 (West 1988))).[5]

M.C.E. is unable to point us to a single opinion in which a court has held that residential burglary is *not* a crime of violence. Instead, he urges us to set aside the cases discussed above as irrelevant because they address the question in the context of federal sentence-enhancement statutes unrelated to the juvenile transfer provision at issue here. M.C.E. highlights a distinction, but not a relevant difference. The courts that have determined residential burglary to be a crime of violence did so because of their conclusions about the nature of residential burglary itself, not because of the particularities of federal sentencing statutes. Whether residential burglary is a crime that creates a substantial risk of violence turns on the dangers inherent in the commission of residential burglary, not on whether that question is considered in the context of sentencing under the Armed Career Criminals Act or transfer to adult status under 18 U.S.C. § 5032.

Moreover, even if we were, as M.C.E. urges, to examine in detail the statutes interpreted in *Taylor, Becker,* and the other cases, our conclusion would be no different. For example, in *Becker,* 919 F.2d at 569, the Ninth Circuit held that residential burglary is indeed a crime of violence, and relied on the definition of "crime of violence" contained in 18 U.S.C. § 16, which provides a general federal statutory definition of the phrase: "any . . . offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing that offense." The language in 18 U.S.C. § 5032 is virtually identical: "a felony offense . . . that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense." The only differences are the inclusion of the word "very" in § 5032 and the reference to "physical force against . . . property" in § 16. We can detect no difference in meaning between "by its nature" and "by its very nature";[6] both direct us to adopt the categorical

---

5. *See also Ye v. Immigration and Naturalization Service,* 214 F.3d 1128, 1134 (9th Cir. 2000) ("A person who enters a home or occupied building to commit theft may well encounter people inside and resort to physical force to carry out his plan."); *Sutherland v. Reno,* 228 F.3d 171 (2d Cir.2000); *United States v. Peters,* 215 F.3d 861, 862 (8th Cir. 2000); *United States v. Custis,* 988 F.2d 1355, 1363–64 (4th Cir.1993), *aff'd, Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994); *United States v. O'Brien,* 972 F.2d 47, 50 (3rd Cir.1992); *United States v. Martinez,* 954 F.2d 1050, 1052–54 (5th Cir. 1992); *United States v. Patterson,* 882 F.2d 595, 604 (1st Cir.1989) ("[W]hile a burglary may start out as a nonviolent crime, the burglar may resort to violence if someone is on the premises or appears there while a burglary is in progress."); *United States v. Pinto,* 875 F.2d 143, 144 (7th Cir.1989) ("[R]esidential burglary has been considered a violent offense for hundreds of years.... No one has doubted for decades that residential burglary is a 'violent' offense, because of the potential for mayhem if burglar encounters resident.") (but noting that the circuits are split over whether non-residential burglary is a crime of violence); *United States v. Davis,* 881 F.2d 973, 976 (11th Cir.1989) ("In accord

with common law tradition and the settled law of the federal circuits, we conclude that the burglary of a dwelling by its nature creates a substantial risk of physical force.") (discussing U.S.S.G. § 4B1.1); U.S.S.G. § 4B1.2(a)(2)(defining burglary of a dwelling as "crime of violence"). As the Model Penal Code explains more fully,

> [A burglar's] intrusion [into a dwelling] for any criminal purpose creates elements of alarm and danger to persons who may be present in a place where they should be entitled to freedom from intrusion. Their perception of alarm and danger, moreover, will not depend on the particular purpose of the intruder. The fact that he may be contemplating a minor offense will be no solace to those who may reasonably fear the worst and who may react with measures that may well escalate the criminal purposes of the intruder.

Model Penal Code § 221.1 comment 3(c), at 75 (1980).

6. In fact, the phrases are so similar that it appears the court in *David H.* mistakenly inserted the word "very" in quoting the language from § 16. *See David H.,* 29 F.3d at 494.

approach as outlined in *Taylor*, 495 U.S. at 600–602, 110 S.Ct. 2143. *See David H.*, 29 F.3d at 494; *see also Impounded*, 117 F.3d 730, 738 n. 12 (3d Cir.1997) ("The language of the second factor of the § 5032 mandatory transfer provisions tracks the language of § 16 in all relevant respects.").

In sum, we hold that residential burglary "by its very nature [ ] involves a substantial risk that physical force against the person of another may be used in committing the offense," and thus that the district court erred in denying the government's motion for mandatory transfer under 18 U.S.C. § 5032. We therefore do not reach the issue of whether the district court erred in its discretionary transfer ruling.

**II.  Collateral Attack**

■ M.C.E. argues that, if we reverse the district court's ruling on mandatory transfer, the case should be remanded to the district court for a hearing to determine the constitutionality of his conviction for residential burglary. We disagree; the Supreme Court has held that defendants may not mount such collateral attacks in similar circumstances. *See Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994).

In *Custis*, the Supreme Court held that a defendant facing a sentencing enhancement under 18 U.S.C. § 924(e) for prior convictions was not permitted to mount a collateral attack during the sentencing proceedings, for two distinct reasons: (1) there is no constitutional right to a collateral attack on the prior convictions, and (2) that the statute itself did not authorize such attack. The Court carved out a sole, narrow exception to this rule: the defendant could collaterally attack his prior conviction only where, in the prior proceeding, he had been deprived of his right to counsel under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *See Custis*, 511 U.S. at 496, 114 S.Ct. 1732; *United States v. Price*, 51 F.3d 175, 177 (9th Cir.1995) (applying *Custis*). The Supreme Court also emphasized the practical imperatives counseling against allowing collateral attacks during sentencing, expressing the concern that federal courts would be required to "rummage through" state court records and that the finality of judgments would suffer. *Custis*, 511 U.S. at 496, 114 S.Ct. 1732.

The same statutory, constitutional, and policy concerns that motivated the *Custis* holding apply to collateral attacks on prior convictions during a juvenile transfer hearing. Section 5032 lacks any provision for such challenges; as the *Custis* Court pointed out, "when Congress intended to authorize collateral attacks at the time of sentencing, it knew how to do so." *Custis*, 511 U.S. at 492, 114 S.Ct. 1732. Accordingly, if Congress had intended to allow collateral attacks during § 5032 transfer hearings, it could have so stated in the statute itself—but declined. The *Gideon* exception does not apply to M.C.E.; he has not alleged that he was deprived of the right to counsel in deciding to plead guilty to residential burglary. And, finally, M.C.E. has already had ample opportunity to mount a collateral attack on his state conviction. In July 2000, the Washington Supreme Court denied review of an earlier state appellate court decision denying M.C.E.'s personal restraint petition (a form of collateral attack) on the grounds that it was untimely, and that it lacked merit because he had been fully informed of his rights when he pleaded guilty to the burglary. *See In re the Personal Restraint Petition of [M.C.E.]*, No. 69708–6 (Wash. July 7, 2000) (unpublished).

**CONCLUSION**

We reverse the district court's denial of the government's motion for mandatory transfer under 18 U.S.C. § 5032. Accordingly, we dismiss as moot the appeal of the district court's order transferring M.C.E. to adult status under the discretionary provision of § 5032 and remand for further proceedings consistent with this opinion.

**REVERSED.**