# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FERNANDO MALTA-ESPINOZA,
             *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
             *Respondent.*

No. 04-71140

Agency No.
A92-717-834

ORDER AND
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 15, 2005—San Francisco, California

Filed March 2, 2007

Before: Mary M. Schroeder, Chief Circuit Judge,
William C. Canby, Jr., Circuit Judge, and
Kevin Thomas Duffy,* District Judge.

Opinion by Judge Canby;
Dissent by Judge Duffy

---

*The Honorable Kevin Thomas Duffy, Senior United States District
Judge for the Southern District of New York, sitting by designation.

## COUNSEL

Lory D. Rosenberg, IDEA Immigration Defense & Expert Assistance Consultation, Darnestown, Maryland, for the petitioner.

William C. Erb, Jr., Office of Immigration Litigation, Civil Division, Department of Justice, Washington, DC, for the respondent.

Paul C. Workman, Holland & Knight, Los Angeles, California, for the amicus curiae.

## ORDER

The petition for panel rehearing is GRANTED. The memorandum disposition filed on June 30, 2005, 137 Fed. Appx. 985, is withdrawn and is replaced by an opinion and dissent filed contemporaneously with this order.

The petition for rehearing en banc is dismissed as moot.

## OPINION

CANBY, Circuit Judge:

Fernando Malta-Espinoza, a native and citizen of Mexico who is a permanent resident of the United States, petitions for review of an order of the Board of Immigration Appeals ("BIA") holding that Malta-Espinoza's state-law conviction for stalking rendered him removable under 8 U.S.C.

§ 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony. Reviewing de novo, *Reyes-Alcaraz v. Ashcroft*, 363 F.3d 937, 939 (9th Cir. 2004), we grant the petition for review, reverse the decision of the BIA, and remand for further proceedings.

## DISCUSSION

Malta-Espinoza is removable if stalking, as defined by California Penal Code § 646.9, qualifies as an aggravated felony by reason of being a "crime of violence." 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(F).[1] In addition, if Malta-Espinoza's conviction qualifies as an aggravated felony, it renders him statutorily ineligible for discretionary cancellation of removal. 8 U.S.C. § 1229b(a)(3).

**[1]** The Immigration Act, 8 U.S.C. § 1101(43)(F), defines "aggravated felony" to include "crimes of violence" as defined in 18 U.S.C. § 16, which provides:

The term "crime of violence" means —

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

At the time of Malta-Espinoza's offense, the California statute that he was convicted of violating provided in pertinent part:

---

[1] The Immigration Judge also found that Malta-Espinoza was removable under 8 U.S.C. § 1227(a)(2)(E) by reason of his conviction for stalking. The BIA did not reach that question on appeal, and relied only on the ground that Malta-Espinoza's conviction was for a crime of violence, qualifying as an aggravated felony under § 1227(a)(2)(A)(iii).

> (a) Any person who willfully, maliciously, and repeatedly follows or harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family, is guilty of the crime of stalking . . . .

Cal. Penal Code § 646.9.[2] The issue, then, is whether this crime falls within the definition of "crime of violence" set forth in 18 U.S.C. § 16. In determining that question, we first apply the categorical approach to determine whether the "full range of conduct" covered by the California statute falls within the meaning of "crime of violence." *See Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002). If it does not, we then proceed to a modified categorical approach in which we can conduct a "limited examination of documents in the record of conviction" to determine whether Malta-Espinoza was convicted of the necessary elements constituting a crime of violence. *See id.* "We do not, however, look to the particular facts underlying the conviction." *Sareang Ye v. INS*, 214 F.3d 1128, 1133 (9th Cir. 2000).

The BIA took note of our decision in *United States v. Jones*, 231 F.3d 508 (9th Cir. 2000), which held that, for purposes of the federal Sentencing Guidelines, a conviction for violation of the California stalking statute was not a crime of violence by reason of its element of threat, because under California law the requisite threat to safety did not mean only physical safety. *Id.* at 519-20 (citing *People v. Borelli*, 77 Cal. App. 4th 703, 719-20 (2000)). The BIA accordingly declined to apply 18 U.S.C. § 16(a) to the California stalking statute and focused instead on the question of "substantial risk" under § 16(b).

---

[2]The California statute also provided that, if the stalking was done in violation of a restraining order, the penalty was imprisonment for two, three, or four years. Cal. Penal Code § 646.9(b). Malta-Espinoza was charged under this enhancing section.

**[2]** The BIA next stated that the California statute prohibited following *or* harassing another person, and that Malta-Espinoza's conviction was for harassing, not following. It is not clear what evidence led the BIA to that conclusion. The administrative record contains only the felony complaint and the entry of conviction on a plea of guilty. The felony complaint on the stalking charge alleged that Malta-Espinoza "did maliciously and repeatedly follow and harass Alma Esposito, and made a credible threat with the intent that she be placed in reasonable fear for her safety and the safety of her family." Nothing in these minimal documents indicates whether Malta-Espinoza was guilty of following or harassing or both. Although the complaint alleged following and harassing conjunctively, the statute proscribes following *or* harassing. Cal. Penal Code § 646.9(a). It is common to charge conjunctively when an underlying statute proscribes more than one act disjunctively; such a charge permits conviction upon proof that the defendant committed either of the conjunctively charged acts. *See, e.g., United States v. Bonanno*, 852 F.2d 434, 441 (9th Cir. 1988) ("Where a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those acts conjunctively charged may establish guilt."). All that we can gather from the charge and the bare record of a plea of guilty, therefore, is that Malta-Espinoza was guilty of either following or harassing or both.[3] This fact need not affect our

---

[3]The dissent argues that Malta-Espinoza's plea admitted both harassing *and* following by pleading guilty to the charge that alleged both alternative elements conjunctively. But a plea of guilty admits only the elements of the charge necessary for a conviction. *See United States v. Cazares*, 121 F.3d 1241, 1247 (9th Cir. 1997). All that was necessary for conviction was that Malta-Espinoza either harassed or followed (with the necessary intent, threat and effect on the victim). His plea of guilty should not establish more than would have been established by a jury verdict of guilty on the charge. *See id.*

We also note that the BIA affirmed on the theory that Malta-Espinoza's conviction was for harassing, not following. We cannot uphold the decision of the BIA, an administrative agency, on a theory other than the one upon which it relied. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

analysis, however, because under a categorical approach we must determine whether the "full range of conduct" covered by the statute falls within the definition of "crime of violence." *See Chang*, 307 F.3d at 1189.[4] On this record, Malta-Espinoza may have been guilty of harassing only, as the BIA assumed. If his conviction for harassing does not qualify as a crime of violence, the BIA's decision cannot stand. We therefore turn to that question.

The BIA concluded that the conviction for harassing met the definition of 18 U.S.C. § 16(b) as involving "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The BIA reasoned that this risk existed because the California statute requires that the harassment be accompanied by a "credible threat with intent to place that person in reasonable fear for his or her safety," § 646.9(a), through a course of conduct that "seriously alarms, annoys, torments, or terrorizes the person" and "would cause a reasonable person to suffer substantial emotional distress." § 646.9(e).[5] Such a combination, the BIA held, creates a "substantial risk that physical force may be used, at least recklessly, over the duration of the commission of the crime."

We conclude that this formulation is an incorrect application of the categorical or modified categorical approach to the determination of a crime of violence. It also runs afoul of our recent en banc decision in *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc), of which the BIA did not have the benefit at the time it decided.

---

[4]Because the "full range of conduct" proscribed by the statute must meet the test of violent crime, it is not sufficient that stalking often results in violence, as the statistics cited by the dissent indicate. If some stalking crimes include no substantial risk of violence, the test described by *Chang* is not met.

[5]The requirement of emotional distress was removed by the 2002 amendments to § 646.9, but was in effect at the time of Malta-Espinoza's offense.

**[3]** Harassing can involve conduct of which it is impossible to say that there is a substantial risk of applying physical force to the person or property of another, as § 16(b) requires. It is true that the California stalking statute requires a credible threat, but "[i]t is not necessary to prove that the defendant had the intent to actually carry out the threat," and even "present incarceration of a person making the threat shall not be a bar to prosecution." § 646.9(g). Stalking under California law may be conducted entirely by sending letters and pictures. *People v. Falck*, 52 Cal. App. 4th 287, 297-98 (1997). Indeed, a stalking conviction has been upheld even though the victim was out of the country at the time that the harassing conduct occurred. *People v. Norman*, 75 Cal. App. 4th 1234, 1240-41 (1999). The bare complaint and plea of guilty in Malta-Espinoza's case therefore establishes categorically no more than the possibility that Malta-Espinoza engaged in such long-distance harassing, which created no substantial risk of application of physical force against his victim or her property. *See Shepard v. United States,* 544 U.S. 13, 24 (2005) (under modified categorical approach, a sentencing court can consider only facts that are necessarily admitted in the plea)*; United States v. Wenner*, 351 F.3d 969, 974 (9th Cir. 2003) (under modified categorical approach, an information alone cannot determine the elements of a conviction). On this record, therefore, the government has not sustained its burden of establishing that Malta-Espinoza was convicted of a crime of violence. *See United States v. Navidad-Marcos*, 367 F.3d 903, 908 (9th Cir. 2004) (under modified categorical approach, the government must establish clearly and unequivocally that the conviction was based on all of the elements of a qualifying offense).

The fact that harassing may include conduct carried on only at a long distance from the victim differentiates stalking from the example of burglary, upon which the BIA relied. "Any time a burglar enters a dwelling with felonious or larcenous intent there is a risk that in the course of committing the crime he will encounter one of its lawful occupants, and use physical force against that occupant either to accomplish his illegal

purpose or to escape apprehension." *United States v. Becker*, 919 F.2d 568, 571 (9th Cir. 1990). Harassment by mail or telephone simply does not carry the same substantial risk. It is true that the California statute at the time of Malta-Espinoza's offense required that the accompanying threat cause "substantial emotional distress" to the victim, but emotional distress is not the equivalent of the use of physical force against the victim, which is the substantial risk required by § 16(b). Moreover, mere harm to the victim is not sufficient under § 16(b); the statute requires use of force against the victim in the course of committing the crime. *See Leocal v. Ashcroft*, 543 U.S 1, 10 (2004) (stating that risk referred to in § 16(b) is not merely "the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime.").

Finally, we note that the BIA found that the substantial risk that inhered in a violation of California's stalking statute was a substantial risk that physical force against the person or property of another will be used "at least recklessly." The Supreme Court in *Leocal* (which was decided after the BIA's decision) left open the question whether force used recklessly qualified for a crime of violence under § 16(b). *Id.* at 13. In a recent en banc decision, however, our court has ruled that reckless use of force is not sufficient to support a finding of commission of a crime of violence within the meaning of § 16(b). *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1129-31 (9th Cir. 2006) (en banc); *see also United States v. Nobriga*, No. 04-10169, 2006 WL 3821413, *2-3 (9th Cir. Dec. 29, 2006)(holding that plea of guilty to physical abuse of family member did not establish conviction for crime of violence when physical abuse may be committed by recklessness). For this reason, as well, the decision of the BIA cannot stand.

## CONCLUSION

**[4]** On the basis of the charging document and Malta-Espinoza's bare plea of guilty, which are the only relevant

documents in the administrative record, we conclude that Malta-Espinoza's conviction for stalking under Cal. Penal Code § 646.9(a) does not qualify as a crime of violence within the meaning of 18 U.S.C. § 16(b). The BIA accordingly erred in ruling that Malta-Espinoza was removable on that ground.

The Immigration Judge held that Malta-Espinoza was also removable under 8 U.S.C. § 1227(a)(2)(E), which specifically makes a conviction for stalking a ground of removal. The BIA did not reach that issue, and neither do we. Our conclusion that Malta-Espinoza's conviction for stalking does not qualify as an aggravated felony, however, necessarily invalidates the ruling of the Immigration Judge that Malta-Espinoza is statutorily ineligible for cancellation of removal. Further proceedings are therefore necessary in that regard as well.

The petition for review is granted. We reverse the decision of the BIA and remand for further proceedings consistent with this opinion.

**PETITION FOR REVIEW GRANTED; REVERSED; CASE REMANDED.**

---

DUFFY, District Judge, dissenting:

The majority has reconsidered its earlier decision and holds that the record before us does not establish that Malta-Espinoza pleaded guilty to conduct constituting a crime of violence, as defined by 18 U.S.C. § 16, when he pleaded guilty to stalking his female victim, Ms. Alma Espisito. In so holding, the majority has essentially decided that courts cannot rely on the words of a defendant's guilty plea to mean exactly what they say. I respectfully dissent.

The Amended Felony Complaint against Malta-Espinoza charged, among of other things, that while under a prior restraining order prohibiting such conduct, Malta-Espinoza:

>Maliciously and repeatedly follow[ed] *and* harass-
>[ed] ALMA ESPISITO, and made a credible threat
>with the intent that she be placed in reasonable fear
>for her safety and the safety of her immediate family.

(Record on Appeal at 126)(emphasis added). This was the
only count in the Amended Felony Complaint to which
Malta-Espinoza pleaded guilty. The other counts were dis-
missed pursuant to his plea deal with the Government. An
Abstract of the Judgment reflects the terms of his guilty plea.
The majority holds that these documents, considered together,
are not enough to establish that Malta-Espinoza both followed
and harassed Ms. Espisito. Instead, they have found that when
a defendant pleads guilty to a count he does not actually admit
to the facts contained therein. They have in effect substituted
their own findings of fact for those set forth in the record.

Defendants do not plead guilty to more than they must. It
goes against well-established precedent to hold that a plea of
guilty is not an admission to all of the facts contained in the
charge. *See United States v. Harris*, 108 F.3d 1107, 1109 (9th
Cir. 1997) (*citing United States v. Mathews*, 833 F.2d 161,
164 (9th Cir. 1987)("a guilty plea conclusively proves the fac-
tual allegations contained in the indictment")); *see also
United States v. Velasco-Medina*, 305 F.3d 839, 851-53 (9th
Cir. 2002)(holding an Abstract of the Judgment and the charg-
ing papers, considered together, were sufficient to prove the
facts alleged). The majority holds that this is not the case
when the charge is phrased conjunctively. The authority the
majority cites, however, is clearly distinguishable. The major-
ity relies on *United States v. Bonanno*, 852 F.2d 434, 441 (9th
Cir. 1988), which holds that where a statute specifies two or
more ways in which an offense may be committed, all may be
alleged in the conjunctive in one count and a jury's finding of
proof of any one of those acts is sufficient to find guilt. This
is different than a guilty plea, which is an "admission that [the
defendant] committed the crime charged against him." *United
States v. Broce*, 488 U.S. 563, 570 (1989)(citations omitted).

By entering a plea of guilty, the accused is stating that he did the discrete acts described in the indictment and is admitting guilt of a substantive crime. *See id.* Because of the clear difference and its import, I cannot agree with the majority.[1]

It is then necessary to determine if stalking by maliciously and repeatedly following and harassing a person, and making a credible threat with the intent that the person be placed in reasonable fear for her safety and the safety of her immediate family while a prior restraining order prohibiting such conduct is a crime of violence under 18 U.S.C. § 16(b).[2]

Subsection 16(b) defines a crime of violence as:

> (b) any other offense that is a felony and that, by its nature, involves a *substantial risk* that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16(b)(emphasis added). The majority's analysis considers both the categorical and modified categorical approach. While the parties have agreed that stalking is not a

---

[1]The Board of Immigrations Appeals (the "BIA") examined the record of conviction and found that Malta-Espinoza was harassing Ms. Espisito, rather than following her. (Record on Appeal at 8.) The BIA did not identify the basis for its finding of fact. It may have reached this conclusion based on police reports presented to the immigration judge. Those police reports are not a part of this Court's consideration. This is of no consequence. The BIA's finding does not change this analysis. Surely, if Malta-Espinoza's harassing conduct alone was sufficient to convince the BIA of the risk violence, the BIA's acknowledgment of his admission to following Ms. Espisito could only have supported its ultimate conclusion.

[2]Subsection 16(a) of Title 18 of the United States Code is not relevant to this case. It states:

The term "crime of violence" means—

(a) an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another . . . .

crime of violence under the categorical approach, consideration of that approach is instructive when applying the modified categorical approach—particularly in light of the logic set forth in *United States v. Becker*, 919 F.2d 568, 573 (9th Cir. 1990) (holding residential burglaries are categorically crimes of violence because "[t]he confluence of common sense and precedent lead to the conclusion that the unauthorized daytime entry of the dwelling of another with the intent to commit a larceny or any felony carries with it a substantial risk that force will be used against the person or property of another").

In *Becker*, and the cases that follow it, this Circuit rightly considered the "substantial risk" requirement set forth in § 16(b). The *Becker* court did not require an absolute certainty of physical force, as the majority seems to require here. Even though physical force is not a necessary element of residential burglary, "[a]ny time a burglar enters a dwelling . . . there is a risk that in the course of committing the crime he will encounter one of its lawful occupants, and use physical force against that occupant . . . ." *Becker*, 919 F.2d at 571; *see also United States v. M.C.E.*, 232 F.3d 1252, 1255-56 (9th Cir. 2000) (holding that under the categorical approach residential burglary is a crime of violence because of the risk of a violent confrontation).

The majority notes that stalking can occur at a distance and implies that in those instances there is a small risk of physical force being used against the victim. The same is true of burglary. A burglar may enter an empty dwelling while its inhabitants are traveling far from home. In fact, it is generally the intention of most burglars to enter undetected and remove valuables without ever facing the occupants of the dwelling. Stalking is a far more personal crime. The stalker often seeks a sense of power or control over his victim, usually through fear. *See* National Institute of Justice and Centers for Disease Control and Prevention, Stalking in America: Findings From the National Violence Against Women Survey, Research in

Brief (April 1998) at 8; *see also* U.S. Dep't of Justice, Stalking and Domestic Violence, Report to Congress (May 2001) at 22 (stating, generally, the motive for stalking is not necessarily sexual; stalkers are motivated by anger or hostility towards the victim and a desire to control the victim). And, because stalking, by definition, requires repeated victimization, it is intuitive that there is an increased opportunity for violence.

Research on stalking has found that violence against a person occurs in 30-50% of stalking cases. *See* Barry Rosenfeld, *Violence Risk Factors in Stalking and Obsessional Harassment*, 31 CRIMINAL JUSTICE AND BEHAVIOR 9, 31 (2004) (performing a meta-analysis of eight leading studies of stalking). It is likely these figures actually underestimate the rate of violence associated with stalking because cases in which stalking has turned violent are often identified solely by the more serious crime such as homicide, rape or assault. *See id.* at 11. The National Center for Victims of Crime reports that "46% of stalking victims experience one or more violent incidents by the stalker." National Center for Victims of Crime Stalking Resource Center, Stalking Fact Sheet, http://www.ncvc.org/ src/AGP.Net/Components/DocumentViewer/Download. aspxnz?DocumentID=40616 (last visited Jan. 26, 2006). In addition to physically harming the victim, research has indicated that approximately 29% of stalkers vandalize the victim's property, and 9% of stalkers kill or threaten to kill the victim's family pets. *See* U.S. Dep't of Justice, Stalking and Domestic Violence, Report to Congress (May 2001) at 22.

In California, the existence of a credible threat—whether direct or implied through conduct—is an element of the crime of stalking. *See* Cal. Penal Code § 646.9(a). Studies have confirmed that there is a positive association between the existence of such threats and a stalker's eventual use of violence. *See* Rosenfeld *supra* at 14-17. An analysis of six leading studies on stalking has shown the making of threats to be the second best indicator of a stalker's potential to use violence

in the future. *See id.* at 29-30. Because California does not recognize individuals who are obsessive followers and harassers to be stalkers unless they make credible threats, persons who meet the statutory definition presumably already present a greater risk of violence. As in this case, restraining orders are often not an effective deterrent; 69% of women said the stalker violated a restraining order. *See* National Center for Victims of Crime Stalking Resource Center, Stalking Fact Sheet, *supra* at 1.

The majority relies on the recent en banc decision, *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006)(en banc). This reliance is misplaced. *Fernandez-Ruiz* holds that the reckless use of force is not sufficient to support a finding of the commission of a crime of violence under 18 U.S.C. § 16(a). The opinion expressly declined to consider § 16(b), which is the only section of the statute at issue in this case. *See id.* at 1125 n.6 ("Additionally, we need not consider 18 U.S.C. § 16(b) because Fernandez-Ruiz's assault convictions were both misdemeanors.").

Malta-Espinoza pleaded guilty to repeatedly following and harassing Ms. Espisito despite the existence of a restraining order. He pleaded guilty to making a credible threat with the intent to put her in fear for her safety and the safety of her immediate family. The majority somehow reaches the conclusion that they are unable to determine whether this created a substantial risk of physical force against Ms. Espisito or her property. They rest their conclusion on the "possibility that Malta-Espinoza engaged in . . . long-distance harassing." I cannot agree. The judicially noticeable documents show that, by repeatedly "following and harassing" Ms. Espisito, Malta-Espinoza was, to some degree, in physical proximity to her. Moreover, it is not without sad irony that I note the lack of physical proximity of a stalker to his victim is not a reliable indicator of the risk of violence. California's stalking laws are rooted in the case of a man who became obsessed with a young actress living hundreds of miles away. He sent her

items through the mail until one day he traveled to her home, shot and killed her on her front step. *See* Gina Piccalo, *The Safety Zone; Stalker's Prey Tells of Terror; Cases like News Anchor Kelly Mack's Show Police, Judges and Law Makers are Taking the Crime of Stalking More Seriously*, L.A. Times, Dec. 4, 2000, at B6 (describing the stalking and murder of 21-year-old actress Rebecca Schaeffer, the co-star of the sitcom "My Sister Sam").

I respectfully dissent.