# Matter of U. SINGH, Respondent

*Decided January 19, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  A decision by a Federal court of appeals reversing a precedent decision of the Board of Immigration Appeals is not binding authority outside the circuit in which the case arises.

(2)  A stalking offense for harassing conduct in violation of section 646.9(b) of the California Penal Code is a crime of violence under 18 U.S.C. § 16(b) (2006) and is therefore an aggravated felony under section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F) (2006). *Matter of Malta*, 23 I&N Dec. 656 (BIA 2004), reaffirmed. *Malta-Espinoza v. Gonzales*, 478 F.3d 1080 (9th Cir. 2007), followed in jurisdiction only.

FOR RESPONDENT:  Kira Murray, Esquire, San Francisco, California

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Adam L. Berg, Assistant Chief Counsel

BEFORE:  Board Panel:  PAULEY, MALPHRUS, and MULLANE, Board Members.

MULLANE, Board Member:

In a decision dated February 7, 2011, an Immigration Judge found the respondent removable under section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(2)(A)(i)(I) (2006), as an alien who has been convicted of a crime involving moral turpitude, and granted his request for a waiver under section 212(h) of the Act.  The Department of Homeland Security ("DHS") has appealed from that decision.  The appeal will be sustained and the respondent will be ordered removed from the United States.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of India who was lawfully admitted for permanent residence on December 5, 2001.  On April 22, 2005, he was convicted in California of the felony offense of stalking in violation

of section 646.9(b) of the California Penal Code, for which he was sentenced to more than a year of imprisonment.[1]  In August 2010 when the respondent returned from India, the DHS initiated removal proceedings against him, charging that he is inadmissible as an arriving alien on the basis of his crime involving moral turpitude.

At his hearing, the respondent conceded that he was removable as charged and applied for a section 212(h) waiver.  The parties stipulated that the respondent's removal would result in extreme hardship to his United States citizen mother and his lawful permanent resident father.  The Immigration Judge found that the respondent was convicted of both following and harassing another person under section 646.9 of the California Penal Code, but he concluded that neither offense was an aggravated felony.  He therefore decided that the respondent was eligible for a waiver of inadmissibility under section 212(h) of the Act and granted him relief as a matter of discretion.  On appeal, the DHS argues that the respondent's stalking conviction is for an aggravated felony, and it precludes him from establishing eligibility for a section 212(h) waiver.  We agree and will sustain the DHS's appeal.

## II.  ANALYSIS

Section 212(h) of the Act includes a proviso that states, "No waiver shall be granted . . . in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony."  The respondent was admitted as a lawful permanent resident in 2001, so the only question before us is whether he demonstrated that his subsequent conviction for stalking in violation section 646.9(b) of the California Penal Code is not for an aggravated felony.  8 C.F.R. § 1240.8(d) (2011).[2]

---

[1] The respondent also has a June 2008 conviction for petty theft and other arrests, but only the stalking conviction is relevant to the issues before us on appeal.

[2] Because the respondent is removable as a result of his crime involving moral turpitude, he will be removed unless he is granted some form of relief.  As an applicant for relief, the respondent bears the burden of proving all the facts required to establish his eligibility. 8 C.F.R. § 1240.8(d).  Furthermore, where the evidence indicates that a ground for mandatory denial of an application for relief *may* apply, the applicant has the burden of demonstrating by a preponderance of the evidence that such grounds do not apply.  *Id.* Thus, in the context of a section 212(h) waiver, where the evidence indicates that the applicant has a conviction for an offense that *may* qualify as an aggravated felony and thus preclude eligibility, the applicant cannot qualify for relief unless he establishes by a preponderance of the evidence that the offense is not an aggravated felony.

(continued...)

The Immigration Judge acknowledged our decision in *Matter of Malta*, 23 I&N Dec. 656 (BIA 2004), where we held that a stalking offense for harassing conduct in violation section 646.9(b) of the California Penal Code was a crime of violence under 18 U.S.C. § 16(b) (2000) and was therefore an aggravated felony under section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (2000). However, the Immigration Judge concluded that he was not bound by that decision because it was reversed by the United States Court of Appeals for the Ninth Circuit in *Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1083-84 (9th Cir. 2007). The respondent contends that the Immigration Judge was not required to apply *Matter of Malta*, citing 28 U.S.C. § 2342 (2006) for the proposition that by specifically reversing our decision, the Ninth Circuit invalidated it nationwide. We disagree.

We apply the law of the circuit in cases arising in that jurisdiction, but we are not bound by a decision of a court of appeals in a different circuit. *Matter of Salazar*, 23 I&N Dec. 223, 235 (BIA 2002). For example, in *Salazar* we considered whether to give nationwide application to the Ninth Circuit's decision in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), which overturned *Matter of Roldan*, 22 I&N Dec. 512 (BIA 1999). We concluded that our interpretation of the statute at issue in *Matter of Roldan* was correct and declined to apply the Ninth Circuit's interpretation outside of that jurisdiction. *Matter of Salazar*, 23 I&N Dec. at 234-35.

Although the respondent argues that the Immigration Judge was bound by the Ninth Circuit's decision reversing *Matter of Malta*, he has not cited any court case that reaches this conclusion regarding Board precedent decisions. An important purpose of Board precedent is the establishment of a uniform interpretation of law in cases before the Immigration Judges and the Board. Whether a Board precedent is binding should not turn on the actions of the circuit court that happens to review the published decision. Indeed, if that were the case, then the opposite should also be true: if a court of appeals affirms a Board precedent, it should then be binding in all other circuits. But that is clearly not the case. This is not to say that Congress could not create such a system, only that it has not done so.

The respondent's reliance on 28 U.S.C. § 2342 is misplaced. That statute provides that a "court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" an agency's decision. This provision does not purport to make a circuit court's

---

(...continued)
*See Salem v. Holder*, 647 F.3d 111, 115-17 (4th Cir. 2011). Specifically, the respondent has the burden to show that his stalking offense is not an aggravated felony. *See id.*; 8 C.F.R. § 1240.8(d).

decision regarding a published Board precedent binding on any other court of appeals, the Board, or Immigration Judges.  Accordingly, because this case arises in the Fourth Circuit, we conclude that the Immigration Judge erred in holding that he was not bound by *Matter of Malta*.

Several important developments subsequent to our decision in *Matter of Malta* warrant discussion.  The first involves amendments to section 646.9 of the California Penal Code that occurred after the conviction in that case. At the time the alien in *Matter of Malta* committed his offense, California's stalking statute provided in relevant part as follows:

> (a) Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking . . . .
> (b) Any person who violates subdivision (a) when there is a temporary restraining order, injunction, or any other court order in effect prohibiting the behavior described in subdivision (a) against the same party, shall be punished by imprisonment in the state prison for two, three, or four years.
>
> . . . .
>
> (e) For the purposes of this section, "harasses" means engages in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose. This course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the person.
> (f) For the purposes of this section, "course of conduct" means two or more acts occurring over a period of time, however short, evidencing a continuity of purpose.
> (g) For purposes of this section, "credible threat" means a verbal or written threat, including that performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or of his or her family.  It is not necessary to prove that the defendant had the intent to actually carry out the threat.

Cal. Penal Code § 646.9 (West 2002).

After 2002, the definition of "harasses" in section 646.9(e) was shortened by deleting the sentence requiring "substantial emotional distress" to the victim.  However, the elimination of this part of the definition does not change our analysis of the statute, because emotional distress is not a requisite component of the substantial risk of physical force to a person or property necessary to establish a crime of violence under 18 U.S.C. § 16(b).  Therefore, there is no reason to alter our decision in *Matter of Malta* in this regard.

Furthermore, after our decision was issued, the Supreme Court developed its line of jurisprudence regarding crimes of violence. Following that authority, we continue to consider our analysis in *Matter of Malta* to be sound. We will accordingly review the Immigration Judge's decision regarding the respondent's case in this light.

As the Immigration Judge found, the respondent was convicted of both following *and* harassing his victim. The California statute is divisible, *see Matter of Malta*, 23 I&N Dec. at 657, but as the Immigration Judge noted, there was no argument that the crime of following under section 646.9 is a crime of violence. Therefore we focus, as did the Immigration Judge, on the crime of harassment under section 646.9 of the California Penal Code.

Section 101(a)(43)(F) of the Act provides that an offense is an aggravated felony if it is "a crime of violence (as defined in section 16 of title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least one year." In turn, 18 U.S.C. § 16 (2006) defines a "crime of violence" as

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In *Matter of Malta*, we held that the respondent was convicted of stalking in the form of harassing conduct and determined that the offense was a crime of violence under 18 U.S.C. § 16(b) and thus was an aggravated felony under section 101(a)(43)(F) of the Act. Specifically, we concluded that when a course of conduct that is both serious and continuing in nature is coupled with a credible threat to another person's safety, there is a substantial risk that physical force may be used. *Id.* at 658. In so holding, we noted that the risk of confrontation that results in the use of physical force is even greater in the stalking context than it is with burglary, because harassment involves a "knowing and willful course of conduct directed at a specific person" from whom the perpetrator often intends to elicit a physical response, whereas an encounter during a burglary may occur as a matter of happenstance during the commission of an offense directed at someone's property. *Id.* at 659 (quoting section 646.9(e) of the California Penal Code) (internal quotation mark omitted). Thus, we concluded that the offense of stalking by harassment under the California statute, by its nature, involved a substantial risk that physical force may be used in committing the crime and that the force would be "used at least recklessly." *Id.* at 660 (citing the Ninth Circuit's decision in *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1145-46 (9th Cir. 2001)

(stating that a crime of violence need not be committed knowingly or purposefully, but it must be committed at least recklessly)).

The Ninth Circuit reversed our decision, holding that stalking by harassing conduct under section 646.9 of the California Penal Code could not be considered a crime of violence under 18 U.S.C. § 16(b) because it was not necessary to prove that the stalker intended to carry out the credible threat and, unlike burglary, stalking could include conduct carried on at a long distance from the victim. *Malta-Espinoza v. Gonzales*, 478 F.3d at 1083-84. The court added that even if there was a substantial risk of physical force being used against the person or property of another, the "reckless use of force is not sufficient to support a finding of commission of a crime of violence within the meaning of § 16(b)." *Id.* at 1084 (citing *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (concluding in an en banc decision, *id.* at 1130, that "crimes of recklessness cannot be crimes of violence")).

The dissenting judge in that case agreed with our conclusion that the offense of stalking by harassing conduct involves a substantial risk that physical force will be used. *Malta-Espinoza v. Gonzales*, 478 F.3d at 1085-88 (Duffy, J., dissenting). He noted that stalking is a more personal crime than burglary, where the offender generally intends to avoid facing the occupants of the dwelling. *Id.* at 1086. By contrast, stalkers often seek a sense of power or control over the victim, usually through fear. *Id.* To bolster this conclusion, the dissenting judge cited national stalking statistics, which indicated the following: 46% of stalking victims experience one or more violent incidents by the stalker, 29% of stalkers vandalize the victim's property, and 9% of stalkers kill or threaten to kill the victim's family pets. *Id.* at 1087. Further, he pointed out that the physical distance of a stalker from his victim is not a reliable indicator of violence. *Id.* at 1087-88. He emphasized this point by noting that the impetus for the California stalker law was the case of a man who became obsessed with an actress living hundreds of miles away, but who one day traveled to her home and shot and killed her on her front step. *Id.* at 1088. He therefore concurred with our conclusion that a violation of section 646.9 was a crime of violence under § 16(b).

Subsequent to our decision in *Matter of Malta*, the United States Supreme Court offered guidance on the meaning of 18 U.S.C. § 16(b) in *Leocal v. Ashcroft*, 543 U.S. 1 (2004). In regard to the question of mens rea, the Court stated that § 16(b)

> covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense. The reckless disregard in § 16(b) relates *not* to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime. The classic example is burglary. A burglary would be covered under § 16(b) *not* because the offense can

> be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.

*Id.* at 10 (footnote omitted). Thus, the critical inquiry is not the mens rea required for conviction of a crime, but rather whether the offense, by its nature, involves a substantial risk that the perpetrator will use force in completing its commission.

The Third Circuit recently explained that "the takeaway from *Leocal* is its instruction to focus the § 16(b) analysis on whether the crime, by its nature, raises 'a substantial risk' of 'the use of force,' and not on the crime's *mens rea*." *Aguilar v. Att'y Gen. of U.S.*, 663 F.3d 692, 697 (3d Cir. 2011) (citation omitted) (quoting *Leocal v. Ashcroft*, 543 U.S. at 10 n.7). *Leocal* teaches "that crimes carrying a *mens rea* of recklessness may qualify as crimes of violence under § 16(b) if they raise a substantial risk that the perpetrator will resort to *intentional* physical force in the course of committing the crime." *Id.* at 699 (emphasis added). In *Aguilar*, which involved a sexual assault offense, the court stated that the question presented was "whether non-consensual sexual intercourse, by its nature, creates a substantial risk that the actor will intentionally use physical force against the victim." *Id.* at 701 (citing *Tran v. Gonzales*, 414 F.3d 464, 471 (3d Cir. 2005) (stating that "§ 16(b) crimes are those raising a substantial risk that the actor will *intentionally* use force in the furtherance of the offense") (internal quotation mark omitted)). Concluding that the offense qualified as a crime of violence, the Third Circuit stated:

> Just as a burglary creates a substantial risk that the burglar will have to use physical force to overcome the desire of home occupants to protect themselves and their property, so too does a sexual assault . . . , by its nature, create a substantial risk that the assailant will use physical force to overcome a victim's desire to protect his or her body from non-consensual sexual penetration.

*Id.*

Similarly, "when a person engages in stalking, there is a substantial risk that the individual being stalked will take exception and, as a result, cause the perpetrator to use force in self-defense or to further effectuate the harassment." *Matter of Malta*, 23 I&N Dec. at 659. Thus, as is the case with burglary and sexual assault, stalking a victim through harassing conduct creates a substantial risk that the perpetrator will *intentionally* use physical force in completing the crime. *See Aguilar v. Att'y Gen. of U.S.*, 663 F.3d at 702 (stating that the "substantial risk involved in sexual assault . . . is that, to achieve non-consensual penetration, the offender will intentionally use force to overcome the victim's natural resistance against participating in unwanted intercourse").

We note that unlike both the sexual assault crime in *Aguilar*, which required only a minimum mens rea of recklessness, and the offense of driving under the influence in *Leocal*, where the standard was less than recklessness, stalking by harassment under section 646.9 of the California Penal Code requires proof that the perpetrator "willfully and maliciously" harassed the victim by engaging in a "knowing and willful course of conduct." We emphasize, however, that the focus in assessing whether an offense is a crime of violence under § 16(b) is not on the mens rea of the crime itself but is, instead, on whether there is a substantial risk that the perpetrator will resort to intentional physical force in the course of committing the crime. We conclude that such a risk of the intentional use of force is inherent in a violation of section 646.9.

Furthermore, in determining this risk, the proper inquiry is not whether physical force must *always* be used, but rather whether the conduct encompassed by the elements of the offense presents a substantial risk of the use of physical force in the *ordinary* case. *Matter of Ramon Martinez*, 25 I&N Dec. 571, 574 (BIA 2011). We are instructed in this regard by *James v. United States*, 550 U.S. 192, 196 (2007), where the Court considered whether attempted burglary was a "violent felony" under the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii).[3] James asserted that it is not enough that attempted burglary "generally" or "in most cases" will create a risk of physical injury to others. *Id.* at 207. Instead, he argued that under the categorical approach, all cases of burglary must present a serious potential risk of physical injury to another for the crime to be considered a violent felony under the residual clause. *Id.* The Supreme Court disagreed, holding that this argument "misapprehends" the categorical approach: "We do not view that approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *Id.* at 208. On the contrary, the Court explained that

> [t]he proper inquiry is whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another. One can always hypothesize unusual cases in which even a prototypically violent

---

[3] Under 18 U.S.C. § 924(e)(2)(B)(ii), an offense is considered a "violent felony" if it is a crime punishable by more than 1 year of imprisonment and "is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." (Emphasis added.) This language is similar to 18 U.S.C. § 16(b), which provides that a "crime of violence" means "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

crime might not present a genuine risk of injury—for example, an attempted murder where the gun, unbeknownst to the shooter, had no bullets.  Or . . . one could imagine an extortion scheme where an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he is mailed regular payments.  In both cases, the risk of physical injury to another approaches zero.  But that does not mean that the offenses . . . are categorically nonviolent.

*Id.* (emphasis added) (citation omitted).

Although the statute at issue in *James v. United States* is different from 18 U.S.C. § 16(b), we consider the rationale of that case to be applicable here because both statutes require a focus on the inherent "risk" that a crime will be accompanied by a particular consequence—physical injury or physical force against a person or property.  *See Perez-Munoz v. Keisler*, 507 F.3d 357, 362-64 (5th Cir. 2007) (applying *James* in the § 16(b) context).  Under the Court's rationale, it is not dispositive for purposes of 18 U.S.C. § 16(b) that section 646.9 of the California Penal Code might sometimes be violated without physical force being used against another person or property.  Instead, we look to the ordinary case to determine whether, given the inherent nature of the crime, there is a substantial risk that the perpetrator will intentionally use physical force in harassing the victim.  *See Aguilar v. Att'y Gen. of U.S.*, 663 F.3d at 702 (stating that "in an ordinary and obvious sense, an offender risks having to intentionally use physical force against a victim in the course of engaging in non-consensual sexual intercourse").

In *Matter of Malta*, 23 I&N Dec. at 659, we held that harassment is "likely to evoke a reaction" from the victim and that the perpetrator "will then respond with physical force against the victim."  We illustrated this observation by citing several examples of California stalking prosecutions where the use of force was present.  These actual prosecutions indicate that in the ordinary case of stalking under California law, there is a risk of confrontation inherent in harassment that results in the perpetrator's use of force against the victim.  Therefore they substantiate our conclusion that the California crime of stalking satisfies the requirements of 18 U.S.C. § 16(b) because the ordinary offense, by its nature, presents a substantial risk of the intentional use of physical force during the course of its commission.

Finally, there is additional support for this conclusion in *Sykes v. United States*, 131 S. Ct. 2267, 2272-73 (2011), where the Supreme Court considered whether a violation of Indiana's vehicle flight statute constituted a violent felony under 18 U.S.C. § 924(e)(2)(B)(ii).  The Court noted its prior holding that burglary is dangerous because it can end in a confrontation leading to violence.  *Id.* at 2273 (citing *James v. United States*, 550 U.S. at 200).  According to the Court, vehicle flight has a greater degree of danger than burglary because a risk of violence is inherent to vehicle flight on account of the confrontations that begin and end the incident and the intervening

pursuit that creates a high risk of crashes. *Id.* at 2274. To support its analysis, the Supreme Court cited statistics that between 18% and 41% of chases involve crashes, which always carry a risk of injury, and that between 4% and 17% of all chases end in injury. *Id.* The Court added that vehicle flight pursuits had a higher rate of injury per 100 incidents than burglary or arson. *Id.* at 2274-75. We recognize that the risk of injury required to find a violent felony under 18 U.S.C. § 924(e)(2)(B)(ii) is not the same as the risk of the use of force for purposes of 18 U.S.C. § 16(b). However, the Supreme Court's analysis regarding the inherent risk of violence caused by vehicle flight is similar to that employed by the dissenting judge in *Malta-Espinoza v. Gonzales*, 478 F.3d at 1086-87, including his comparison to burglary and his reference to statistics to support the conclusion that there is a high rate of violence associated with stalking.

Having considered the Ninth Circuit's decision in *Malta-Espinoza v. Gonzales*, as well as Supreme Court and other circuit court authority, we respectfully conclude that our decision in *Matter of Malta* is correct, and we will continue to adhere to our precedent in cases arising outside of the Ninth Circuit. Applying *Matter of Malta* to the respondent's case, we hold that his stalking offense for harassing conduct in violation section 646.9(b) of the California Penal Code involved a substantial risk of the intentional use of physical force during the course of its commission and, consequently, is a crime of violence under 18 U.S.C. § 16(b). Because the respondent was sentenced to more than a year of imprisonment, he has been convicted of an aggravated felony and is therefore ineligible for a section 212(h) waiver. Accordingly, the DHS's appeal will be sustained and the respondent will be ordered removed from the United States.

**ORDER:** The appeal of the Department of Homeland Security is sustained.

**FURTHER ORDER:** The respondent is ordered removed from the United States to India.